**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 13 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re: MAURICE G. WOODS and
TERESA J. WOODS,

      Debtors.

---

MAURICE G. WOODS and TERESA J.
WOODS,

      Appellants,

    v.

THOMAS J. KENAN, Trustee;
ANDREWS ROYALTY, INC.; GARY J.
LAMB; and JON M. MORGAN,

      Appellees.

No. 98-6063

---

**APPEAL FROM THE UNITED STATES**
**BANKRUPTCY APPELLATE PANEL**
**(BAP NO. WO-97-O35)**

---

Maurice G. Woods, II, McAtee & Molinsky, P.C., Oklahoma City, Oklahoma, for
Appellants.

Thomas J. Kenan (David Pomeroy with him on the brief), Fuller, Tubb, Pomeroy,
Kirschner, Bickford & Stokes, Oklahoma City, Oklahoma, for Appellee, Kenan.

---

Before **ANDERSON** , **BRORBY** , and **MURPHY** , Circuit Judges.

**ANDERSON** , Circuit Judge.

This is an appeal from a decision of the Bankruptcy Appellate Panel (BAP). The appellants, Maurice G. and Teresa J. Woods (the Woods), argue that at the closing of their Chapter 11 bankruptcy case in 1993, certain properties of the bankruptcy estate were irrevocably abandoned to them by operation of law. Thomas J. Kenan, who served as Chapter 11 trustee and as trustee under the confirmed plan of reorganization, argues that the case was properly reopened, that any abandonment was subsequently revoked, and that the properties in question were validly sold to third parties. Because we agree that the bankruptcy court had authority under 11 U.S.C. § 350(b) to reopen the case, and that under Fed. R. Civ. P. 60(b) it effectively vacated the original order closing the case, we hold that the abandonment was revoked and that the debtors have no interest in the properties.

## I. BACKGROUND

The Woods filed a Chapter 11 bankruptcy petition in December 1984. In May 1987, Thomas Kenan was named trustee of the bankruptcy estate, which at that time included a number of fractional interests in oil and gas properties. The central issue in this case is the ownership of those interests, which have been

-2-

described as "very small interests in a large number of properties," essentially constituting a "revenue stream." Appellants' App. Vol. I at 68 (testimony of Kenan in bankruptcy court, April 24, 1997).

The trustee asserts that his sale of the properties to Andrews Royalty, Inc., Gary J. Lamb, and Jon M. Morgan, doing business as Packard Partners (Packard), is valid. The Woods, however, claim that all the properties were irrevocably abandoned to them by operation of law when an order closing the bankruptcy case was entered before sale of the properties was consummated. In the alternative, they argue that certain properties were not included in any valid sale, alleging that in written agreements and conveyances the trustee repeatedly failed to describe in full detail the numerous properties constituting the "revenue stream." They also insist that some of the oil and gas interests were specifically abandoned to them by the trustee in a 1987 motion. In order to address these claims, we find it necessary to lay out the lengthy history of this case in some detail.

**A.**

In 1987, soon after Kenan's appointment as trustee, Maurice Woods advised Kenan of certain causes of action he believed he had against third parties, for oil and gas properties which were previously owned by his father and which he claimed should have been conveyed to him. After examining the merits of

these claimed causes of action, the trustee determined that pursuing them would be burdensome to the estate, and on August 3, 1987, filed a motion to abandon them to the debtors. The United States Bankruptcy Court for the Western District of Oklahoma approved this motion on August 19, 1987.

On July 10, 1991, the trustee's proposed plan of reorganization was confirmed; it appointed Kenan to administer the plan, pursuing the business of the estate until such efforts were no longer justified, at which time he was to sell the estate's interest in the oil and gas properties. By April 1993 the trustee had determined that it was no longer prudent to continue the business of the estate, and therefore arranged for the sale of the oil and gas properties.

On April 21, 1993, the trustee filed a motion asking the bankruptcy court to approve a proposed sale. This motion was set for hearing on May 14, 1993. On May 6, 1993, the case came up for hearing on the bankruptcy court's routine disposition docket. At this hearing the trustee noted the filing of his Motion to Approve Sale and reported that the sale of the properties and distribution of the proceeds would complete the administration of the estate. The bankruptcy court requested that the trustee file his final report and application for final decree at the trustee's earliest convenience.

At some point, the trustee was approached by additional parties interested in buying the oil and gas properties, and he successfully requested that the

hearing on the Motion to Approve Sale be continued until July 9, 1993, so that he could obtain the highest possible value for the properties; the motion was eventually heard on August 18, 1993. Nevertheless, on May 13, 1993, the trustee filed his final report and made application for a final decree. On June 3, 1993, the bankruptcy court entered a final decree stating that "[t]he estate of [the Woods] has been fully administered, the trustee, Thomas J. Kenan is discharged as trustee of the estate . . . , and the case is closed." Appellants' App. Vol. I at 186.

On July 15, 1993, Kenan filed a document titled "Trustee's Further Description of Oil and Gas Properties," referring to his previously filed Motion to Approve Sale, and describing more fully some of the oil and gas properties of the estate. When on August 18, 1993, the bankruptcy court held a hearing on Kenan's Motion to Approve Sale filed April 21, 1993, the Woods were present and represented by counsel. The Woods objected to the sale of the properties, but not on the ground that the bankruptcy case was already closed. The bankruptcy court entered an order granting Kenan's motion and approving the sale of the properties described in the April 21, 1993, and July 15, 1993, filings. Kenan thereafter prepared and delivered instruments of conveyance to the purchasers, Packard, for the price of $72,000. At some point, Kenan's $5,000 trustee's bond was exonerated.

At some time following the order approving the sale to Packard, the Woods began sending letters to the entities that were purchasing production from the oil and gas properties, alleging the following defects in the transfer of the properties: (1) some properties had not been specifically described in Kenan's filings; (2) some instruments of conveyance, although recorded in the appropriate counties, had undated notarizations and were therefore void; (3) some or all of the properties had reverted to the Woods by operation of law. Following these allegations, some purchasers of production began suspending payments to Packard. In July 1995, Packard notified Kenan that Maurice Woods had written to at least two purchasers of production contending that all transfers from Kenan to Packard were void because the final decree closing the case was entered before the bankruptcy court's August 18, 1993, order approving the transfers.

**B.**

Because of the Woods' challenges to the validity of the transfers, on July 27, 1995, Kenan filed a motion in the bankruptcy court to reopen the Woods' case. On August 22, 1995, the court held a hearing on the motion, and on August 30, 1995, issued an order reopening the case and vacating its prior order closing the case. In its findings of fact, the court found that any premature closing of the case "was due to inadvertence or excusable neglect," and stated that "[c]losing of

the case occurred [during a time period in which] there was an administrative effort by the Assistant United States Trustee's office, the Clerk, and others to close old cases." Appellee's App. at 5-6. It further determined that the Packard Partners were "bona fide purchasers" of the contested properties, that "[t]he actions of the debtors in attempting to upset the rights of the bona fide purchasers constitute[d] misconduct," and that "[i]t would be unjust and inequitable if, somehow, the debtors were to retain these valuable oil and gas properties at the expense of the good faith purchasers." Id. at 6. It also found that "[a]ny errors in the descriptions of the oil and gas properties and any errors in the acknowledgments of the conveyances to the Packard Partners, [were] harmless errors." Id.

In its conclusions of law, the bankruptcy court rejected the Woods' argument concerning 11 U.S.C. § 554(c). That statute reads as follows:

> Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

Reading the opening clause of § 554(c) in conjunction with 11 U.S.C. § 350(b), which provides that a bankruptcy case may be reopened for cause, the court determined that it had authority to reopen the case, and to "order[] otherwise," i.e., to vacate its final decree closing the case in order to settle Packard's ownership of the contested properties. It also relied on Fed. R. Civ. P. 60(b),

based on "the misconduct of the debtors," "the mistake, inadvertence, or excusable neglect of the trustee," "the principles of equity," and "the windfall to the debtors that would occur." [1] Appellee's App. at 9-10.

On appeal, the district court affirmed by order dated May 1, 1996. It reasoned that one purpose for § 554(c)'s language allowing a court to "order[] otherwise" was "to provide for the circumstance where the court finds that there is a valuable asset that should have been administered by the trustee." Appellee's App. at 18. It also held that "[b]ecause the bankruptcy court's finding that the case was prematurely closed due to mistake, inadvertence or excusable neglect is not clearly erroneous, the bankruptcy court did not err or abuse its discretion in vacating the final decree and order closing the bankruptcy case." Id. at 19. We dismissed the Woods' subsequent appeal to this court as a jurisdictionally defective appeal from the affirmance of an interlocutory order. Woods v. Kenan (In re Woods), No. 96-6181, slip. op. (10th Cir. Feb. 7, 1997).

On March 6, 1997, with the case thus reopened and the prior closing order vacated, Kenan filed a motion in the bankruptcy court to approve the sale of oil and gas properties to Packard. These properties included interests "that he had

---

[1] As an alternative rationale, the court cited its 11 U.S.C. § 105(a) power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The district court did not rely on this ground to affirm the bankruptcy court, and we do not discuss it here.

-8-

failed to specifically describe in the earlier motion to approve the sale of oil and gas properties to the Packard Partners." Trustee's Motion of March 6, 1997, Appellants' App. Vol. II at 284. The Woods filed objections to the motion, as well as their own motion demanding an accounting of revenues from the contested properties, and a motion asking the court to require Kenan to post bond in the amount of $200,000.

On April 24, 1997, the bankruptcy court heard evidence on the motions. The Woods argued that the contested properties had been irrevocably abandoned to them at the time the case was closed. They also argued that the court's August 19, 1987, order of its own force abandoned certain specific properties and not merely causes of action. They presented no evidence that they had obtained any of the contested properties pursuant to the abandoned causes of action. On May 21, 1997, the court issued an order granting Kenan's motion to approve the sale of oil and gas properties to Packard. In its findings of fact, it stated that its order of August 19, 1987, abandoned only causes of action, not oil and gas properties. In its conclusions of law, it held that the confirmed plan of reorganization "is res judicata and controls the rights of the parties thereunder." Appellee's App. at 28. It held that "[t]he trustee has authority under the confirmed plan of reorganization to sell these properties to the Packard Partners. The earlier, inadvertent closing of the case is immaterial, because the case has been reopened." Id. Relying on

the provisions of the confirmed plan, the court also held that Kenan was not required to post a bond or to provide an accounting. After the court had announced its ruling approving the trustee's sale to Packard, the Woods asked to bid on the properties. The court responded, "Well, they've been sold. . . . And if the Woods want to buy them, I guess, they can go to Packard." Appellants' App. Vol. I at 115.

Undeterred, the Woods appealed to the BAP. Applying the law of the case doctrine, the BAP refused to reach issues related to the bankruptcy court's August 30, 1995, ruling reopening the case and vacating the final decree, stating that those issues would "need to be addressed on appeal to the Tenth Circuit." Woods v. Kenan (In re Woods), 215 B.R. 623, 626 (B.A.P. 10th Cir. 1998). However, it held that (1) disallowing the Woods' bid on April 24, 1997, did not violate due process; (2) Kenan's March 6, 1997, Motion to Approve Sale was not void for lack of a bond, under the confirmed plan; and (3) the bankruptcy court properly concluded that its August 19, 1987, order did not affect the sale to Packard, because the order abandoned only causes of action, and because the Woods "failed to produce any evidence" that they received properties pursuant to those causes of action. Id. at 627.

Before this court, the Woods again argue that apart from any considerations of "'fairness' and 'equity,'" Appellants' Br. at 8, they are entitled by operation of law to the contested oil and gas properties.

## II. DISCUSSION

The BAP was correct in observing that despite its own deference, under the law of the case doctrine, to the district court's order of May 1, 1996, we are not bound by that ruling. "So long as a matter is properly preserved in [a] lower court, the fact that the lower court can properly refuse reconsideration as a matter of law of the case of course does not prevent subsequent review . . . on appeal." 18 Charles Alan Wright et al., Federal Practice and Procedure § 4478, at 801 (1981); cf. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) ("[A] district court's adherence to law of the case cannot insulate an issue from appellate review."). The Woods properly preserved their challenges to the district court's order by raising them before the BAP. Therefore, in addition to the issues ruled on by the BAP, we also reach issues which the district court decided but which the BAP declined to address, relating to the bankruptcy court's order of August 30, 1995.

## A. Technical Abandonment under § 554(c)

### 1.

When the Woods' case was closed on June 3, 1993, the contested properties were abandoned to the Woods by operation of law and were deemed fully administered. The trustee does not appear to argue to the contrary. Under § 554(c), a technical abandonment is necessarily the effect of the closing order, regardless of the trustee's intentions. At the time of closing, the court had not "order[ed] otherwise;" the property was scheduled; and the property, although in the process of administration, had not been "otherwise administered." See, e.g., In re Shelton, 201 B.R. 147, 155 (Bankr. E.D. Va. 1996) ("[T]here appears little doubt that [the trustee] technically abandoned the [contested p]roperty under § 554(c) when he failed to administer that asset prior to the closure of [the] case."); Stanley v. Sherwin-Williams Co., 156 B.R. 25, 27 (W.D. Va. 1993) ("It would be neither desirable nor consistent with § 554 to resolve abandonment questions by returning to the uncertain practice of attempting to determine the trustee's intentions."). Contra In re Schmid, 54 B.R. 78, 79-80 (Bankr. D. Or. 1985) ("The trustee did not intend to abandon the lawsuit under . . . § 554(c). Consequently, there was no abandonment. . . . Inadvertence should not accomplish an abandonment under circumstances where abandonment would not have been allowed had it been requested before closing."); Mele v. First Colony

-12-

Life Ins. Co., 127 B.R. 82, 86 (D.D.C. 1991) ("[I]t must also be shown that the abandonment of a claim is the 'result of an intelligent decision' by the trustee." (quoting Schmid, 54 B.R. at 80)).

2.

The crucial issue in this case is whether and under what circumstances the technical abandonment was revocable. Courts have taken varying approaches to this issue. Some courts have held, as did the bankruptcy and district courts in this case, that § 554(c) by its terms allows a court broad power to modify or revoke a technical abandonment once a case is reopened under § 350(b), because a court may simply "order[] otherwise" after the fact. See Neville v. Harris, 192 B.R. 825, 832 (D.N.J. 1996); Shelton, 201 B.R. at 155 (alternative holding) (citing Neville); DeVore v. Marshack (In re DeVore), 223 B.R. 193, 198 (B.A.P. 9th Cir. 1998) (citing Neville and Shelton). Others have held that the reopening of a case under § 350(b) automatically revives the original case and negates any technical abandonments. See Compass Bank for Savings v. Billingham (In re Graves), 212 B.R. 692, 695-96 (B.A.P. 1st Cir. 1997); Shelton, 201 B.R. at 155-56 (alternative holding); Figlio v. American Mgmt. Servs., Inc. (In re Figlio), 193 B.R. 420, 424-25 (Bankr. D.N.J. 1996) (indulging the fiction that a reopened case "was never 'closed'"). Still others have held that technical abandonments of scheduled

-13-

property known to the trustee are irrevocable. <u>See, e.g.</u>, <u>Huntington Nat'l Bank v. Hunter (In re Hunter)</u>, 76 B.R. 117, 118-20 (Bankr. S.D. Ohio 1987); <u>In re Atkinson</u>, 62 B.R. 678, 679-80 (Bankr. D. Nev. 1986).

We disagree with each of these approaches. The first approach is unsound because as we read it, § 554(c) does not speak to the issue of whether an abandonment is revocable. In fact, it says nothing about what happens after a technical abandonment. It states only that a court may prevent a technical abandonment by "order[ing] otherwise." <u>Cf. In re Prospero</u>, 107 B.R. 732, 734 (Bankr. C.D. Cal. 1989) ("order[ing] otherwise" at the closing of case); <u>In re Hart</u>, 76 B.R. 774, 778 (Bankr. C.D. Cal. 1987) (same). That is, under certain conditions, a technical abandonment will <u>occur</u> at the closing of a case "[u]nless the court orders otherwise;" the statute does not state that a technical abandonment will <u>remain in effect</u> "[u]nless the court orders otherwise."

We disagree with the second approach because we do not think reopening a case should always automatically [2] have such a potentially unexpected and

---

[2]Some cases purporting to adopt this approach do so by reading into a court's reopening order an intent to accomplish a revocation. <u>See, e.g.</u>, <u>Shelton</u>, 201 B.R. at 156 ("[T]he very act of reopening the closed case under these circumstances implicitly acknowledges the Court's reasoned determination that the otherwise abandoned property should be returned from the debtor to the debtor's estate for potential administration by the trustee."); <u>In re Graves</u>, 212 B.R. at 695 ("We find it important that the bankruptcy judge did not limit the purpose for which the reopening was taking place when he reopened the case.").

(continued...)

unwanted legal consequence. We see no reason, for example, why a debtor seeking to reopen a case in order to schedule an overlooked debt should have to relinquish all technically abandoned properties (which may have in the meantime increased in value through the debtor's efforts); or why, after an intentional technical abandonment, reopening should always bring burdensome properties back into the estate. See DeVore, 223 B.R. at 198 ("We fail to see how the reopening of a bankruptcy case and withdrawal of a no asset report, without more, negate a valid technical abandonment. The reopening of a case is 'merely a ministerial or mechanical act [that] . . . has no independent legal significance and determines nothing with respect to the merits of the case.'" (quoting In re Germaine, 152 B.R. 619, 624 (B.A.P. 9th Cir. 1993)); cf. Fed. R. Bankr. P. 5010 advisory committee's note (1991) ("In most reopened cases, a trustee is not needed because there are no assets to be administered."). Moreover, § 350(b) does not indicate what effect reopening has on technical abandonments, and it does not by its terms provide authority to revoke an abandonment. [3]

---

[2](...continued)
In this respect, these cases are similar to those that rely on a court's power to "order[] otherwise" under § 554(c).

[3]Although under § 350, "[a] case may be reopened in the court in which such case was closed to administer assets," technically abandoned assets are by the terms of § 554(c) already deemed "administered." Reopening "to administer assets" is possible only when there are assets unknown to the trustee at the time the case was closed. See 3 Lawrence P. King et al., Collier on Bankruptcy ¶
(continued...)

We disagree with the third approach because it is simply an overbroad application of the general rule that "[o]nce properly accomplished, an abandonment is irrevocable." [4] 3 William L. Norton Jr., Norton Bankruptcy Law and Practice § 53:2 (2d ed.1995 & supp. 1998). Unlike an abandonment under § 554(a)-(b), which by very definition must be intentional and unequivocal and to which the general rule of irrevocability applies rather strictly, see, e.g., In re Gibson, 218 B.R. 900, 904 (Bankr. E.D. Ark. 1997), a technical abandonment may occur inadvertently as an automatic consequence of premature case closing. Thus, abandonment under § 554(c) "is merely a rebuttable presumption. If a party in interest objects and the considerations that would have justified abandonment prior to the closing of the case do not exist, the court has discretion to reopen the case and order further administration." 3 Norton, supra, at § 53:3.

---

[3](...continued)
350.03[1] (15th ed. rev. 1998).

[4]Cases purporting to apply a broad rule of irrevocability to technical abandonments typically involve one or more factors cutting against revocation, such as reliance interests, see In re Atkinson, 62 B.R. at 679-80 (noting that debtors had pursued an abandoned cause of action at significant expense), or a conscious decision by the trustee to accomplish the abandonment, see In re Hunter, 76 B.R. at 120.

Thus, we conclude that a strict irrevocability rule does not properly account for Fed. R. Bankr. P. 9024, which provides that Fed. R. Civ. P. 60 applies, with minor modifications, [5] to all bankruptcy cases. [6] Under Fed. R. Civ. P. 60(b), "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding . . . ." While we agree with the many courts that have held that a bankruptcy court may, in appropriate circumstances, revoke a technical abandonment, we do so on the basis of Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b). See, e.g. , In re Schmid , 54 B.R. 78, 81 (alternative holding); see also In re Sutton , 10 B.R. 737, 740-41 (Bankr. E.D. Va. 1981) (discussing Rule 60(b) but declining to revoke an abandonment); cf. In re Ozer , 208 B.R. 630, 633-34 (Bankr. E.D.N.Y. 1997) (noting that courts have allowed revocation of technical abandonments "in certain instances, if the abandonment takes place due to particularly relevant clerical mistake or inadvertence of the trustee"); In re Lintz West Side Lumber, Inc. , 655 F.2d 786, 789-91 & nn. 4-6 (7th Cir. 1981) (decided under the Bankruptcy Act of 1898) (relying in part on Rule 60(b) for revocation of an abandonment order,

[5]One such modification is that "a motion to reopen a case . . . is not subject to the one year limitation prescribed in Rule 60(b)." Fed. R. Bankr. P. 9024.

[6]The Woods argue that Rule 60(b) is inapplicable to this case because "the general equitable powers of the bankruptcy courts cannot be exercised to circumvent the specific legislative directive in 11 U.S.C. § 554(c)." Appellants' Br. at 37. We reject this argument, for as we have pointed out, § 554(c) says nothing about the revocability of technical abandonments.

-17-

"where there has been a mistake in the original abandonment and where the purported [owner] has not been unfairly prejudiced.").

3.

Here the bankruptcy court first reopened the case under § 350(b) and then relied on Rule 60(b) to vacate its prior closing order. We review a court's decision to reopen a case under § 350(b) only for an abuse of discretion. <u>See</u> <u>Nintendo Co. v. Patten (In re Alpex Computer Corp.)</u>, 71 F.3d 353, 356 (10th Cir. 1995); <u>In re Bianucci</u>, 4 F.3d 526, 528 (7th Cir. 1993). Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." We have no trouble concluding that if Rule 60(b) relief was available and warranted, the court was justified in reopening the Woods' case for "cause." <u>See</u> <u>In re Shondel</u>, 950 F.2d 1301, 1305 (7th Cir. 1991) ("[A] bankruptcy court exercises equitable powers and . . . should emphasize substance and not technical considerations that will prevent substantial justice. . . . [C]ounsel neglect or mistake . . . may be a factor in the finding of 'other cause'" under § 350(b) (citations and internal quotes omitted)). The issue of the propriety of Rule 60(b) relief, however, requires a more searching analysis.

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Although the bankruptcy court did not specify by number which subsections of Rule 60(b) grounded its decision, it apparently relied on subsections (1) (based on "mistake, inadvertence, or excusable neglect,"), (3) (based on "the misconduct of the debtors,"), and (6) (based on "the principles of equity," and "the windfall to the debtors that would occur"). Appellee's App. at 9-10. Even assuming the Woods are correct regarding the inappropriateness of Rule 60(b)(3) relief in this case, see Appellants' Br. at 18-20, we think the bankruptcy court was fully justified in relying on either Rule 60(b)(1) or Rule 60(b)(6).

Because "the trial court is vested with a great deal of discretion in determining whether to grant or deny a Rule 60(b)(1) motion," we will not overturn that determination "absent abuse." Otoe County Nat'l Bank v. W & P Trucking, Inc., 754 F.2d 881, 883 (10th Cir. 1985). We note the bankruptcy court's finding that premature closing of the case "was due to inadvertence or

-19-

excusable neglect," Appellee's App. at 6, a finding that was upheld by the district court and that we have no reason to question. [7]

While it is true that Rule 60(b)(1) relief is generally not available for the mere carelessness of a party, see Pelican Prod. Corp. v. Marino , 893 F.2d 1143, 1146 (10th Cir. 1990), something more than that was involved here. In the spring of 1993, Kenan was actively discharging the trust, seeking to obtain the highest price for the contested properties, and he so notified the court in his first Motion to Approve Sale. [8] The court, while this motion to approve a sale of estate properties was still pending, nevertheless told Kenan to enter a request for a final decree, and then itself entered that decree prior to hearing the pending motion. In hindsight, Kenan likely wishes he had waited until after the sale to enter his request for a final decree; perhaps at the time he expected the court to wait to act on the request until after it had heard his motion. In any event, Kenan made his

[7]The Woods argue that "[t]here was clearly no inadvertence or neglect in the Trustee's actions to close this case," and that it is "obvious" that the "Trustee was fully aware of the consequences of his actions in filing an application to close this Chapter 11 case." Appellants' Br. at 33, 36. The record indicates that neither the trustee nor the Woods nor even the court were so enlightened. Given the fact that the trustee attempted a post-closing sale to Packard, which the bankruptcy court approved (with the Woods present and silent as to the effect of the case closing, see Appellee's App. at 3), their present arguments on the issue of inadvertence do not appear to be made in good faith and are not well taken.

[8]Thus this was not a case where inadvertence resulted from lack of diligence. See 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.41[1][c][ii] (3d ed. 1998).

unfortunate filing at the court's behest, in a period in which, as the bankruptcy court found, the clerk was pushing to close cases such as this one. [9] In these circumstances, any neglect by the trustee was excusable. Furthermore, we note that the bankruptcy court has power under Rule 60(b)(1) to correct its own inadvertent errors. See 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.41[3] (3d ed. 1998); see also Fed. R. Civ. P. 60(b) advisory committee's note (1946). We think the bankruptcy court's exercise of Rule 60(b)(1) power was most appropriate.

We also uphold the bankruptcy court's reliance on Rule 60(b)(6), a "grand reservoir of equitable power to do justice in a particular case." Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975) (en banc). Rule 60(b)(6) relief "is

---

[9]Apparently the court, the trustee, and the debtors initially treated the case closing as of little consequence; and the bankruptcy court reasoned, in its order reopening the case, that "[c]losing a case is basically a matter of administration allowing the clerk to close the files and ship them off to the archives." Appellee's App. at 9. One circuit court has noted that

> there is some confusion at the bankruptcy court regarding the closing of cases. We are told that the clerk has been delegated the authority to close cases, but that the clerk only does so when it is deemed that a reasonable time has passed without case activity. . . . It is also suggested that the closing of a case is ministerial at times. . . . On the other hand, in this matter it is quite clear that the bankruptcy judges did not consider the case to be closed at all, and the parties did not consistently behave as if it were.

Schwaber v. Reed (In re Reed), 940 F.2d 1317, 1321-22 n.4 (9th Cir. 1991).

-21-

appropriate . . . when it offends justice to deny such relief," Cashner v. Freedom Stores, Inc. , 98 F.3d 572, 580 (10th Cir. 1996), and will be reversed "only if we find a complete absence of a reasonable basis and are certain that the . . . decision is wrong," State Bank of S. Utah v. Gledhill (In re Gledhill) , 76 F.3d 1070, 1080 (10th Cir. 1996). Here it would have been unjust to allow the June 3, 1993, final decree and the resulting technical abandonment to stand, because it would have allowed the Woods to benefit from their own delay at the trustee's expense. The Woods did not raise a claim of technical abandonment at the August 18, 1993, hearing or for a considerable time thereafter. In the meantime, Kenan transferred the contested properties to Packard and distributed the proceeds to the Woods' creditors. To award the properties to the Woods at this late date would most certainly be contrary to "the principles of equity." Appellee's App. at 10.

The authority to revoke an abandonment under Rule 60(b) is circumscribed, of course, by the standards governing Rule 60(b) relief. Specifically, because Rule 60(b) is inherently equitable, see In re Gledhill , 76 F.3d at 1078, the granting of Rule 60(b) relief may be challenged on equitable grounds. For example , revocation may not be warranted where it would unfairly prejudice the purported owner of the property.

The Woods raise claims of laches and estoppel. They emphasize the fact that at some point the trustee apparently believed and made statements to the

-22-

effect that a technical abandonment had occurred. They claim that they detrimentally relied on the trustee's actions, that they were "prejudiced" by their receipt of oil and gas revenues from producers to whom they had written, and "were prejudiced in believing that the Trustee would not be challenging the Woods' assertions." Appellants' Br. at 26.

We conclude that the Woods have no equitable claim to these properties. Under the confirmed plan, the properties were supposed to be sold to pay creditors; the estate was far from having a surplus to return to the Woods. Furthermore, as we have emphasized, the Woods themselves failed to raise the issue of abandonment for many months after the case was closed, and when they did raise the issue, it was not with the court or the trustee or even the purchasers. Rather, the Woods wrote to the oil and gas producers in dogged attempts to obtain the very revenues which they now claim "prejudiced" them. The Woods have attempted to take every potential advantage of the inadvertent closing of this case. We discern no equitable principle that would allow the Woods any further benefit from that mistake. For similar reasons, we do not sympathize with the Woods' claims that the bankruptcy court's rulings threaten finality and deny the Woods a "fresh start." Appellants' Br. at 38. If finality has been disrupted, we do not think it is the court that is to blame.

We therefore conclude that the bankruptcy court acted appropriately in reopening the Woods' case under § 350(b), and that under Fed. R. Civ. P. 60(b) the court's order vacating the prior closing order was not an abuse of discretion. The vacatur of the closing order effectively revoked the prior abandonment and enabled the court to approve Kenan's March 7, 1995 motion to sell the properties to Packard, finalizing what was required by the confirmed plan of reorganization. [10]

## B. Bond

The Woods claim that Kenan's March 7, 1995 motion was void because he did not have a bond in place. They argue that the bankruptcy court erred by not granting their request under 11 U.S.C. § 322(a) to require a $200,000 bond of Mr. Kenan upon reopening of the case. We agree with the BAP and the bankruptcy court that at the time the case was reopened, Kenan was serving not as Chapter 11 trustee, but as post-confirmation trustee under the terms of the confirmed plan, which did not require him to post a bond. See 11 U.S.C. § 1141(a) ("[T]he

---

[10]Because we uphold the court's approval of Kenan's March 7, 1995, motion, the Woods' argument that they are entitled to properties not described in previous motions or notices must fail. That the March 7, 1995, motion included properties not described in previous documents is irrelevant.

-24-

provisions of a confirmed plan bind the debtor . . . .").  By its very terms,

§ 322(a) does not govern the appointment of a post-confirmation trustee:

> [A] person selected under section . . . 1104 . . . of this title to serve
> as trustee in a case under this title  qualifies if before five days after
> such selection, and before beginning official duties, such person has
> filed with the court a bond in favor of the United States conditioned
> on the faithful performance of such official duties.

11 U.S.C. § 322(a) (emphasis added).  Section 1104 governs the appointment of

trustees "[a]t any time after the commencement of the case but  before

confirmation of a plan ."  11 U.S.C. § 1104(a).  Thus the Woods' argument fails.

## C.  Abandonment Order

The Woods assert that "[i]ncluded within the list of oil and gas properties

ordered sold by the Bankruptcy Court on May 20, 1997 were some properties

previously ordered abandoned to the Woods on August 19, 1987."  Appellants'

Br. at 30.  Contrary to this assertion, the BAP and the bankruptcy court both

determined that the 1987 order abandoned only the causes of action disclosed by

Mr. Woods, not the underlying properties.  Reviewing only for clear error,  see

Rowe Int'l, Inc. v. Herd (In re Herd)  , 840 F.2d 757, 759 (10th Cir. 1988), we

uphold this finding.  That the 1987 order abandoned only causes of action is

evident from the closing paragraphs of Kenan's brief in support of his motion to

abandon:

-25-

Accordingly, the trustee believes that these claims should be abandoned to Maurice G. Woods in order that he might pursue them as he might deem fit. Some of the claims may be facing the expiration of a period during which they must be brought, and Maurice Woods should be given the opportunity to persuade another attorney to file these claims at this time on a contingency fee basis.

Accordingly, because of the burden to the estate of paying for this uncertain litigation, the trustee believes he is justified in abandoning these claims to the debtor, Maurice G. Woods.

Appellants' App. Vol. I at 164.

We must agree with the Woods that "[c]ertainly, had the Woods been forced to litigate those claims and been given a judicial award of those property interests, the Bankruptcy Court could not have then reacquired them for the estate." Appellants' Br. at 31. Yet at every stage of the present litigation, the Woods have chosen not to explain when or how they acquired the properties. They have produced no evidence of a settlement agreement or anything of the kind. The bankruptcy court determined that the properties were subject to sale by the trustee because there was no evidence that they were acquired as a result of the abandoned causes of action. The BAP agreed with this conclusion. So do we.

D.  Disallowance of Bid

The Woods argue that the Bankruptcy Court's May 21, 1997, Order violates due process by disallowing them the opportunity to bid under § 363 during the

sale of their oil and gas properties.  This is a meritless argument.  We agree with

the BAP's resolution of this issue:

> Debtors clearly had adequate notice and the opportunity to be heard.
> They waited until the Bankruptcy Court had ruled on the second
> motion to sell before voicing a desire to bid on the property.[11]  The
> Bankruptcy Court's refusal to entertain this request at this stage of
> the proceeding did not deprive the Debtors of due process.

Appellee's App. at 37.

Accordingly, we AFFIRM.

---

[11]Counsel for the Woods admitted at the hearing, "I was hoping my objection would be sustained; and, therefore, we wouldn't need to try to purchase [the properties], you would abandon them to us."  Appellants' App. Vol. I at 115-16.