**In re Michael P. BALONZE, Mickell B. Balonze, Debtors.**

**No. 04–35459LMW.**

United States Bankruptcy Court, D. Connecticut.

Jan. 13, 2006.

---

Mickell B. Balonze, Branford, CT, Debtor, Pro Se.

Benjamin T. Staskiewicz, Wethersfield, CT, for Movant Chapter 7 Trustee.

*MEMORANDUM OF DECISION AND ORDER RE: MOTION TO REVOKE ADMINISTRATIVE CLOSING AND TO ADMINISTER ASSET; AND MOTION FOR AUTHORITY TO COMPROMISE CLAIM AND FOR APPROVAL OF SETTLEMENT AGREEMENT*

LORRAINE MURPHY WEIL, Bankruptcy Judge.

Before the court are: that certain Motion To Revoke Administrative Closing of Bankruptcy Case (and To Administer Asset) (Doc. I.D. No. 30, the "Motion To Revoke")[1] filed by the chapter 7 trustee (the "Trustee"); that certain Motion for Authority To Compromise Claim (and for Approval of Settlement Agreement By and Between Ronald I. Chorches, Trustee, and Town Fair Tire Centers, Inc.) (Doc. I.D. No. 31, as deemed amended by Doc. I.D.

No. 48, the "Motion To Compromise"); the Debtor Mickell B. Balonze's (the "Debtor") objection to the Motion To Revoke (Doc. I.D. No. 43, the "First Objection"); and the Debtor's objection to the Motion To Compromise (Doc. I.D. No. 44, the "Second Objection"). Because this case already has been reopened pursuant to Bankruptcy Code § 350(b) (*see* Order Reopening Chapter 7 Case (Doc. I.D. No. 20)), the court construes the Motion To Revoke as a motion to revoke the technical abandonment of the asset relevant to this case, *i.e.*, the federal claims alleged against Town Fair Tires, Inc. ("Town Fair") in *Balonze v. Town Fair Tires, Inc.* (Civ. No. 02CV2247 (WWE)) pending in the district court (the "District Court") for this district (the "Federal Action").

The court has jurisdiction over these matters as core proceedings, pursuant to 28 U.S.C. §§ 1334 and 157(b), and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[2] This memorandum constitutes the findings of facts and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable here by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

## I. FACTS

The following facts are based on the entire record in these contested matters, the chapter 7 case, and the Federal Action. The chapter 7 case was commenced by a voluntary petition (Doc. I.D. No. 2, the "Petition") dated November 4, 2004 and filed with this court on November 24, 2004. The Petition was filed by Attorney Alfred J. Zullo, on behalf of the Debtors Michael

---

1. References to the docket of this Chapter 7 case appear in the following form: "Doc. I.D. No. ___." References herein to the docket in the Federal Action (as hereafter defined) appear in the following form: "Civ. No. 02–2247, Doc. I.D. No. ___."

2. That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings ... arising in ... a case under Title 11, U.S.C ....."

P. and Mickell B. Balonze (the "Debtors"), husband and wife.[3] *Id.*

On the Debtors' Schedule B. Personal Property ("Schedule B") filed with the Petition, assets that are not jointly held are differentiated by the designation "husband" or "wife." On page two of Schedule B were the following entries: "Open Workers Comp case $1.00—Wife [the 'Workers' Compensation Claim'];" and "Federal Discrimination case [*i.e.,* the Federal Action] $1.00—Wife."[4] The Debtor also listed both assets on "Schedule C. Property Claimed As Exempt." *Id.* The Debtor listed the Federal Action with a value of $4,399.06 and an exempt amount of $4,415.02,[5] and the Workers' Compensation Claim with a value of $1.00, and an exemption of $1.00. *Id.*

The meeting of creditors, pursuant to Bankruptcy Code § 341, was held on December 21, 2004. The order discharging the Debtors was issued on February 28, 2005 pursuant to Bankruptcy Code § 727. (Doc. I.D. No. 5.) On May 19, 2005 the Trustee filed a Report of No Distribution (the "NDR"). (Doc. I.D. No. 7.) The Debtors' bankruptcy case was closed by the Clerk's Office on May 24, 2005. (Doc. I.D. No. 8.) The Trustee moved to reopen the case on June 6, 2005. (Doc. I.D. No. 9, the "Motion To Reopen.") A hearing was held on the Motion To Reopen on July 13, 2005,

and an Order granting the Motion To Reopen issued on July 14, 2005. (Doc. I.D. No. 20.)[6]

Town Fair filed a motion in the District Court to stay the Federal Action on August 3, 2005 (the "Motion To Stay"). (Civ. No. 02–2247, Doc. I.D. No. 81.) The Debtor filed an objection to the Motion To Stay on August 15, 2005. (Civ. No. 02–2247, Doc. I.D. No. 82.) The Motion To Stay remains pending as of the date of this ruling. (*See* Civil Docket for Civ. No. 02–2247.)

The Debtor moved this court to reconsider its order granting the motion to reopen the case (Doc. I.D. No. 22), and a hearing was held on that motion on August 31, 2005. An order denying the motion to reconsider issued on September 1, 2005. (Doc. I.D. No. 27.) Town Fair and the Trustee memorialized a settlement agreement with respect to the Federal Action on November 4, 2005. (Doc. I.D. No. 30, Attachment # 1.)

The motions currently before the court were filed on November 7, 2005. (Doc. I.D. Nos. 30 and 31.) The Debtor's objections were filed on November 21, 2005. (Doc. I.D. Nos. 43 and 44.) The Debtor filed a motion to stay proceedings in this court, with supporting brief, on November 14, 2005. (Doc. I.D. Nos. 37 and 38.) A hearing was held on the issues raised in

---

3. The Debtor is *pro se* with respect to these proceedings.

4. The Debtor's alleged work-related injuries and subsequent termination are described more fully below.

5. Those numbers may have been transposed in the Schedules. The claimed value of the Federal Action may have been $4,415.02. and the exempt amount may have been $4,399.06.

6. References to the audio records of the relevant hearings appear in the following form: "7/13/05 Audio Record at ———; 12/5/05 Audio Record at ———." At the July 13,

2005 hearing, the Debtor orally objected to reopening this case. (7/13/05 Audio Record at 4:13:18 to 4:14:06.) However, the Trustee and counsel for Town Fair waived any argument that reopening this case would automatically rescind any abandonment of the assets of the bankruptcy estate. (7/13/05 Audio Record at 4:17:35 to 4:17:48.) In response to that waiver, the court ordered that the reopening of the case was without prejudice to the Debtor's right to argue the subject abandonment issue in subsequent proceedings in the reopened case. *(Id.)*

Doc. I.D. Nos. 30, 31, 37, 43 and 44 on December 5, 2005. An order denying the Debtor's motion to stay issued on December 7, 2005 and the remaining matters were taken under advisement. (Doc. I.D. No. 46.) An amended settlement agreement was filed by the Trustee on December 13, 2005. (Doc. I.D. No. 48, the "Amended Settlement Agreement.")

## II. *THE WORKERS' COMPENSATION CLAIM AND THE FEDERAL ACTION*

In the complaint filed in the Federal Action on December 19, 2002, the Debtor alleges that on May 4, 1999 she suffered an occupational injury[7] while employed at Town Fair "which brought about treatment by a physician and included therapy, medication, injections, and surgery." (Civ. No. 02–2247, Doc. I.D. No. 1 at 3.) The Debtor claimed that, as a result of her injury, she was verbally harassed at Town Fair and her work hours and rate of pay were reduced. On or about May 26, 1999, the Debtor filed a *Notice of Claim for Compensation* with the State of Connecticut Workers' Compensation Commission with respect to the Workers' Compensation Claim. (Debtor's Exhibit D, December 5, 2005 Hearing, Tab 1.) On August 27, 2001, the Debtor was terminated from her employment.[8]

The Debtor is *pro se* in the Federal Action. The complaint in the Federal Action is organized in four counts as follows:

1. A violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* (the "A.D.A."), for employment discrimination on the basis of a disability against a private employer. (Civ. No. 02–2247, Doc. I.D. No. 1.);

2. A violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of gender. (*Id.*);

3. Claim of retaliation which the District Court construed as a claim for retaliation under the Workers' Compensation Act, Connecticut General Statutes (C.G.S.) § 31–290(a).[9] (Civ. No. 02–2247, Doc. I.D. No. 74 at 23–24.);[10] and

4. "Other acts," which were construed by the District Court as based on the theory of hostile work environment due to a disability. (Civ. No. 02–2247, Doc. I.D. No. 74 at 19–22.)

In the Federal Action, the Debtor seeks the court's order for reinstatement to her former position, and for monetary damages. (Civ. No. 02–2247, Doc. I.D. No. 1.) On March 31, 2005, the Federal Action was dismissed upon the District Court's granting of Town Fair's motion for summary

---

**7.** That injury was described as tendinitis of the right index finger, caused by repetitious movement. (Debtor's Exhibit D, December 5, 2005 Hearing, Tab 1.)

**8.** For a detailed elucidation of the alleged facts and time line of the Debtor's injury, aftermath, and subsequent Federal Action, *see* Civ. No. 02–2247, Doc. I.D. No. 74, pp. 4–12.

**9.** Section 31–290(a) of the Connecticut General Statutes provides:

No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged or in any manner

discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded him pursuant to the provisions of this chapter.

Conn. Gen.Stat. Ann. § 31–290(a) (West 2006).

**10.** The retaliation claim was settled by stipulation of the parties, with settlement in the amount of $5,642.80 paid to the Debtor, valid as to the § 31–290(a) claim only. (Debtor's Exhibit D, December 5, 2005 Hearing, Tab 5.)

judgment as to all counts of the Debtor's complaint. (Civ. No. 02–2247, Doc. I.D. No. 74.) However, in a *sua sponte* order of reconsideration dated April 12, 2005, the District Court reconsidered its ruling on the motion for summary judgment, vacating its ruling in part. Finding that it had not adequately taken into account the standard of review where a plaintiff is proceeding *pro se*, the District Court reinstated the Debtor's claims of disability discrimination and hostile environment in violation of the A.D.A., finding questions of fact appropriate for a jury to resolve. (Civ. No. 02–2247, Doc. I.D. No. 75.)

## III. *SETTLEMENT NEGOTIATIONS*

In January of 2005, telephonic settlement negotiations took place between the Trustee and Town Fair's law firm, Zeldes, Needle & Cooper ("ZNC"), with regard to litigation of the Federal Action. In subsequent negotiation discussions, which spanned from January, 2005 through May, 2005, ZNC held firmly to an offer of $5,000.00, payable to the Trustee in settlement of all claims against Town Fair. (8/5/05 Audio Record at 2:19:30 to 2:20:50.)

The Trustee requested that a discrimination attorney, William Palmieri, Esq., review the litigation in the Debtor's pending discrimination case. Attorney Palmieri did so and advised the Trustee that the case had little value to the bankruptcy estate, other than settlement value, and that the Debtor would not prevail on her claim at trial. (7/13/05 Audio Record at 4:08:50 to 4:10:20; 12/5/05 Audio Record at 2:15:11 to 2:18:40.) In May, 2005, the Trustee balanced the settlement offer of $5,000.00 against the exemption of "over $4,000.00" claimed against that asset by the Debtor. Believing that there would be "no higher offer" of settlement from ZNC, the Trustee determined that the case had no value to the bankruptcy estate. (12/5/05 Audio Record at 2:25:21 to 2:25:39.) The Trustee filed the NDR on May 19, 2005, convinced of Town Fair's unwillingness to offer more than $5,000.00, as evidenced by the hard line it was taking in the negotiations. (7/13/05 Audio Record at 4:10:20 to 4:11:18.)

On May 20, 2005, a status conference was held in the Federal Action. (Civ. No. 02–2247, Doc. I.D. No. 78.) At that status conference, the Federal Action, now comprised of only the Debtor's claims of disability discrimination and hostile environment in violation of the A.D.A., was scheduled for a jury trial on November 7, 2005. (12/5/05 Audio Record at 3:03:07 to 3:03:18.) On May 25, 2005, ZNC contacted the Trustee and offered $15,000.00 in settlement. Sensing that Town Fair was eager to resolve the matter, and that he had more "room" to negotiate a settlement with ZNC, the Trustee requested his office paralegal to prepare a withdrawal of the NDR. (12/5/05 Audio Record at 2:26:30 to 2:27:47.) Subsequent negotiations yielded a settlement agreement that would pay in full all creditors who filed valid proofs of claim against the Debtor's estate [11] (and the Debtor the amount of her exemption in respect of the Federal Action). (12/5/05 Audio Record at 2:34:55 to 2:35:10.) [12] A settlement agreement to

---

**11.** Notwithstanding that this is a joint case for the Debtors under Bankruptcy Code § 302, a separate estate is maintained for each of the Debtors. *See* A.N. Resnick and H.J. Sommer, 2 *Collier on Bankruptcy* ¶ 302.02[1][b] at 302–7 (15th ed. rev.2005). Accordingly the proceeds of the Amended Settlement Agreement

(as defined below) can be used to pay only claims against the Debtor's estate because the Federal Action is the Debtor's sole property and the estates have not been substantively consolidated. *See id.* at 302–7 to 302–8.

**12.** The Trustee explained the enhancement of Town Fair's settlement offer from $15,000.00

that effect was memorialized between the Trustee and Town Fair on November 4, 2005. (Doc. I.D. No. 30, Attachment 1.) In response to the court's concern over the apparent inclusion of the Workers' Compensation Claim within the contemplated release of Town Fair by the Trustee (12/5/05 Audio Record at 2:53:25 to 2:57:02; 3:18:29 to 3:20:38), the parties conformed the document, specifically exempting "Employee's [Workers' Compensation] Claim No. 1C800111W8 under Section 568 of the Connecticut General Statutes" from the release. The Amended Settlement Agreement and Release (Doc. I.D. No. 48, collectively, the "Amended Settlement Agreement") was filed with the court on December 13, 2005.

## IV. *ANALYSIS*

■ It is uncontested that the Federal Action was property of the estate prior to the closing of this case (at least to the extent that its value exceeded the amount of the Debtor's exemption thereof). *See* 11 U.S.C. §§ 522(b)(1), 522(d)(5), 541(a). However, the Federal Action ceased to be property of the estate upon the abandonment deemed effectuated when the case was closed. *See* 11 U.S.C. § 554(c). Ac-

cordingly, the threshold issue is whether that abandonment now can be rescinded and the Federal Action restored to its former status as property of the estate. If the Federal Action can be restored to the estate, the Trustee may dispose of it by settlement on appropriate conditions.

### A. *Abandonment*

Bankruptcy Code § 554 provides as follows:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1)[13] of this title not otherwise administered at the time of closing of a case is abandoned to the debtor and administered for purposes of section 350[14] of this title.

---

to a one hundred percent case for creditors as follows. The Trustee opined that the May 25, 2005 conversation with ZNC was the best since the case was filed. He was able to escalate the offer from ZNC to $15,000.00. (12/5/05 Audio record at 2:27:05 to 2:27:35.) The Trustee concluded that he had more leeway than he previously had thought in negotiating with ZNC to significantly raise its offer. (*Id.* at 3:01:46 to 3:02:05.) The Trustee stated that there came a point in time, after the $15,000.00 settlement offer was made by ZNC, when he indicated to ZNC that he wanted enough money as a settlement to pay all of the Debtor's creditors in full, the reason being that he would then be able to represent to the court that he had done everything he could do to give the greatest benefit to the creditors of the estate. His settlement request was for

one hundred percent of creditor claims, and for all administrative costs (and the amount of the Debtor's exemption). (*Id.* at 3:16:14 to 3:17:31.)

**13.** 11 U.S.C.A. § 521(1) delineates the items the debtor must file in a bankruptcy action, including a schedule of assets and liabilities.

**14.** Bankruptcy Code § 350 provides that:

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C.A. § 350 (West 2006).

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C.A. § 554 (West 2006).[15]

 Case law interprets Section 554(c) as providing for a "technical abandonment," a term of art distinguishing the abandonment that is deemed to occur pursuant to Section 554(c) with respect to a scheduled asset of the estate when a case is closed from the abandonment which takes place only after notice to creditors and at least an opportunity for a hearing pursuant to Sections 554(a) and (b) and Rule 6007.[16]

Unlike an abandonment under § 554(a)-(b), which by very definition must be intentional and unequivocal and to which the general rule of irrevocability applies rather strictly, a technical abandonment may occur inadvertently as an automatic consequence of premature case closing.

*In re Woods*, 173 F.3d 770, 778 (10th Cir.), *cert. denied*, 528 U.S. 878, 120 S.Ct. 187, 145 L.Ed.2d 157 (1999) (citations omitted). With certain exceptions not relevant here, courts generally hold that an abandonment effectuated pursuant to Bankruptcy Code § 554(a) or (b) and Rule 6007 is irrevocable. *See* A.N. Resnick and H.J. Sommer, 5 *Collier on Bankruptcy* ¶ 554.02[3] at 554–6 (15th ed. rev.2005). However, courts differ in their interpretation of the consequences of a case reopening under Bankruptcy Code § 350(b) to a technical abandonment deemed effectuated pursuant to Section 554(c).

"Some courts have held ... that § 554(c) by its terms allows a court broad power to modify or revoke a technical abandonment once a case is reopened under § 350(b), because a court may simply order otherwise after the fact." *Woods* at 776–77. Other courts have held that the reopening of a case pursuant to Section 350(b) "automatically revives the original case and negates any technical abandonments ... Still others have held that technical abandonments of scheduled property known to the trustee are irrevocable." *Id.* at 777.

In *Woods*, the Tenth Circuit rejected all three approaches and held that "abandonment under § 554(c) is merely a rebuttable presumption. If a party in interest objects

---

**15.** Rule 6007 of the Federal Rules of Bankruptcy Procedure also applies to abandonments and provides:

(a) *Notice of Proposed Abandonment or Disposition; Objections, Hearing.* Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

(b) *Motion by Party in Interest.* A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate.

**16.** "Property of the estate may be abandoned in two ways. First, it may be formally abandoned after 'notice and a hearing' [in the bankruptcy court.] Second, it may be abandoned by operation of law if it has been scheduled [in the debtor's schedule of assets required by 11 U.S.C. § 521(1)] and not 'otherwise administered' at the time the [bankruptcy] case is closed." *EDP Medical Computer Systems, Inc. v. U.S.*, 2005 WL 3117433 *5 (E.D.N.Y.2005). "The filing of a Report of No Distribution is insufficient proof of a conscious abandonment of an asset." *Mendelsohn v. Ozer*, 241 B.R. 503, 506 (E.D.N.Y. 1997), citing *In re Schmid*, 54 B.R. 78, 79 (Bankr.D.Or.1985).

and the considerations that would have justified abandonment prior to the closing of the case do not exist, the court has discretion to reopen the case and order further administration." *Woods* at 778 (internal quotations omitted). The standard for relief from a technical abandonment, the *Woods* court said, is Rule 60(b) of the Federal Rules of Civil Procedure (made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure).[17] *Id.* at 778.

■ This court agrees that, in this context, it is appropriate to distinguish between a Section 554(a) or (b) abandonment which requires an unequivocal act (and Rule 6007 process) and a Section 554(c) deemed "technical" abandonment (which requires only the ministerial act of the Clerk's Office). This court further agrees that the standard for granting relief from the consequence of a case closing (*i.e.,* a Section 554(c) "technical" abandonment) is Rule 60(b) because employing that standard gives appropriate protection to the normal rule of finality for Section 554(c) "technical" abandonments. Accordingly, the court now applies Rule 60(b) to the facts here.

■ Rule 60(b)(6) states that the court may relieve a party from final judgment, order, or proceeding for "any ... reason [other than those stated in Rule 60(b)(1)-(5)] justifying relief from the operation of the judgment." [18] "Subpart (6) has been recognized as constituting a 'grand reservoir of equitable power to do justice in a particular case.'" *Harris v. U.S.,* 2005 WL 578918 *3 (S.D.N.Y.2005), citing *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986), *cert. denied,* 480 U.S.

908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). "[S]ubpart (6) is properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272 (2d Cir.1994) (internal quotations omitted).

> There are at least two reasons why courts demand 'extraordinary circumstances' to be present prior to granting Rule 60(b)(6) relief. First, to read the provision otherwise would allow the exception to swallow the rule, and void the important limitations imposed on those specific provisions in Rules 60(b)(1)-(5).[19] Second, the requirement preserves the interest of finality of ... [judgments] . . . .

*Harris* at *3. "Rule 60(b) is inherently equitable, [and] the granting of Rule 60(b) relief may be challenged on equitable grounds. For example, revocation may not be warranted where it would unfairly prejudice the purported owner of the property." *Woods* at 780 (internal quotations omitted). In addition, under Rule 60(b), "[t]he burden of proof is on the party seeking relief" from a judgment, order, or other proceeding. *Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 55 (2d Cir.2004). "In determining whether a movant has met its burden under Rule 60(b)(6), relevant considerations include ... the absence of unfair prejudice to the opposing party if the requested relief is granted." *In re Teligent,* 326 B.R. 219, 227 (S.D.N.Y. 2005).

■ In the present case, the Trustee was participating in settlement discussions with Town Fair which took a positive turn after the Trustee filed the NDR. The

---

17. None of the exceptions set forth under Fed. R. Bankr.P. Rule 9024 negate the court's application of Fed.R.Civ.P. Rule 60 to the matters at bar.

18. For ease of analysis, the court will assume that Rule 60(b)(1)—(5) does not apply here.

19. The Motion To Revoke was filed well within the referenced one-year limitation period.

Trustee testified that he has withdrawn NDRs in the past when circumstances in "his" respective cases warranted it. The Trustee was under the assumption that in this instance he would be able to withdraw the NDR as he had done in other cases on previous occasions. (12/5/05 Audio Record at 2:32:15 to 2:32:31.) This case was closed by the Clerk's Office within only six days of the filing of the NDR.[20] (Doc. I.D. No. 8.) The Trustee filed his motion to reopen the case only thirteen days after the case was closed. (Doc. I.D. No. 9; 12/5/05 Audio Record at 2:32:32 to 2:32:52.)

Applying Rule 60(b)(6) to the totality of two sequences of events favors revocation of (or relief from) the technical abandonment here. The first sequence of events is comprised of Town Fair's $15,000.00 settlement offer and its proximity in time to both the filing of the NDR, the closing of the case and the Trustee's seeking reopening of the case. As explained more fully below, the second sequence of events begins with Town Fair's $15,000.00 settlement offer and ends with Town Fair's improvement of the settlement offer to pay all creditors of the Debtor in full and the Debtor the amount of her exemption.

The court concludes that the circumstances of the case before it (including the very prompt closing of this case, the Trustee's prompt action to reopen the case, the equitable interest of the Debtor's creditors, and the lack of undue prejudice to the Debtor[21]) are sufficiently "extraordinary" to justify relief from the "technical" abandonment of the Federal Action. Moreover, given the circumstances here, rele-

gating the Debtor's creditors to what would likely be a no dividend case when a one hundred percent case is certain[22] would "work an extreme and undue hardship", *De Weerth, supra,* upon them, a consideration also justifying Rule 60(b) relief. For the foregoing reasons, the court will grant the Trustee relief from the "technical" abandonment and the Federal Action is restored to the estate. Accordingly, the Trustee may (if otherwise appropriate) dispose of the Federal Action by settlement.

## B. *Approval of Settlement*

▉▉▉▉ Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The bankruptcy court "may only approve a proposed settlement after an independent determination that it does not 'fall below the lowest point in the range of reasonableness'." *In re Altman,* 302 B.R. 424, 425 (Bankr.D.Conn.2003), citing *In re Best Prods. Co.,* 177 B.R. 791 (S.D.N.Y.1995), *aff'd,* 68 F.3d 26 (2d Cir.1995). The court finds and/or concludes that the amended settlement meets this test, and determines that the proposed settlement is reasonable and equitable to the parties. Town Fair has agreed to pay the lesser of (a) $56,172.22, or (b) the sum of the following: $4,415.02, the amount listed by the Debtor as the value of her exemption related to the federal claims; 100% of all timely filed proofs of claim filed by scheduled creditors

---

**20.** The foregoing was not an inappropriate act by the Clerk's Office, but it was very prompt.

**21.** Because there was only a brief period of time when it appeared that the Federal Action was (and would remain) hers alone (*i.e.,* the thirteen days between the case closing and the Trustee's filing of the Motion To Reopen),

and because the court finds it unlikely that the Debtor will prevail in the Federal Action, the court finds no undue prejudice to the Debtor by the granting of the Motion To Revoke.

**22.** *See* part IV. B, *infra.*

of the Debtor that are ultimately allowed by this court, and Trustee compensation. In return, the Trustee releases Town Fair from any and all claims (the "Released Claims") against it, with the exception of the Workers' Compensation Claim.[23]

As set forth above, the record shows that the Trustee had an attorney familiar with cases similar to the Federal Action review the pleadings in the Federal Action, as well as various items of discovery. (12/5/05 Audio Record at 2:15:11 to 2:18:40.) The record also shows that, based on that review, that attorney opined that the Federal Action had no trial value (*i.e.*, the Debtor would not prevail), but that the Federal Action had some settlement value. (7/13/05 Audio Record at 4:08:50 to 4:10:20; 12/5/05 Audio Record, *supra.*)

The Debtor has offered to pay the net proceeds (if any) from the Federal Action to the bankruptcy estate.[24] However, as noted above, the record indicates that it is unlikely that this *pro se* Debtor will prevail in the Federal Action. If the Debtor does not prevail, neither she nor her creditors will receive anything from the Federal Action. On the other hand, the proposed settlement will pay the Debtor's creditors a one hundred percent dividend and the Debtor herself the amount of her exemption.[25] For all of the foregoing reasons, the court will approve the Amended Settlement Agreement as within the "range of reasonableness."[26]

## V. CONCLUSION

For the reasons stated above: (a) the Motion To Revoke is granted, (b) the Motion To Compromise is granted and the Amended Settlement Agreement is approved, (c) the First Objection is overruled, and (d) the Second Objection is overruled.

**IT IS SO ORDERED.**

23. No one contends that the Workers' Compensation Claim now is property of the estate. Accordingly, the Trustee cannot release it. To the extent (if any) that the Released Claims are not subsumed into the Federal Claim, the Released Claims (if they exist) were never listed by the Debtor in her schedules. (*See* Doc. I.D. No. 2 (Schedules).) Accordingly, those claims were not deemed abandoned when the case was closed and remain property of the estate which the Trustee can release. *Cf. In re Haralambous*, 257 B.R. 697 (Bankr. D.Conn.2001) (Krechevsky, J.) (unscheduled asset not abandoned pursuant to Section 554(c)).

24. In her Objection to the Motion To Revoke (Doc. I.D. No. 43), the Debtor states that she "would disclose any monetary award [from the Federal Action] and would not [object] to the Trustee ... reclaim[ing] any portion for the benefit of her creditors at the conclusion of the trial."

25. As noted above, in Schedule B the Debtor valued the Federal Action at $4,399.06 (or $4,415.02). The Debtor now rejects that valuation as the contrivance of her attorney. (12/5/05 Audio Record at 3:57:12 to 3:58:28.) The Debtor argues that the Federal Action must be very valuable if Town Fair is willing to pay more than $56,000 for the Trustee's release of it. However, the Debtor has offered no evidence of the value of the Federal Action to rebut the Trustee's evidence. Moreover, based on this record the court finds that it is more likely that it is the Debtor's evident desire to litigate with Town Fair until the end of time if possible, rather than the perceived merits of the Federal Action, which has produced the subject settlement.

26. The court has considered the Debtor's remaining arguments and finds them unpersuasive.