In re Ronald J. PARR, Alfred R. Parr and Parr Meadows Racing Association, Inc., Debtors.

FLUSHING SAVINGS BANK, Appellant,

v.

Ronald J. PARR, Alfred R. Parr and Parr Meadows Racing Association, Inc., Appellees.

Bankruptcy Nos. 879–03213, 879–03214 and 879–02996.

United States Bankruptcy Court, E. D. New York, at Westbury.

Dec. 12, 1979.

---

4. *Id.*

Jules V. Speciner, Great Neck, N. Y., for debtors.

John F. Scheffel, New York City, for Trustee Sheldon Lowe.

Weil, Gotshal & Manges, New York City, for Flushing Savings Bank, by Michael L. Cook, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for ITT, by Stephen H. Case, New York City, of counsel.

## MEMORANDUM DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

Flushing Savings Bank ("Flushing") has taken appeals to the District Court from Orders of this Court dated November 6, 1979 ("November Orders") appointing Sheldon Lowe trustee of the property of the above named debtors (the "Trustee"). Flushing has moved this Court for orders staying the Trustee from taking any action pursuant to the November Orders pending appeal. For the reasons set forth below, Flushing's motion is denied.

### I.

Federal Rule of Bankruptcy Procedure 805 provides in pertinent part, that:

A motion for a stay of the judgment or order of a [bankruptcy court], for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to the [bankruptcy court]. Notwithstanding Rule 762 but subject to the power of the District Court reserved hereinafter, the [bankruptcy court] may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal *upon such terms as will protect the rights of all parties in interest.* . . . (emphasis added)

A stay pending appeal is in the nature of a preliminary injunction. Therefore, the Court will consider the factors used in determining whether a preliminary injunction should issue, in determining whether the

Court should issue a stay pending appeal in these cases. The relevant factors are: (1) likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) irreparable injury to the moving party unless the stay is granted; (3) no substantial harm to the other interested persons; and (4) no harm to the public interest.

## LIKELIHOOD OF SUCCESS ON THE MERITS

■ Flushing has appealed to the District Court two sets of related orders. On October 25, 1979 the Court entered orders dismissing the Chapter XI petitions of Alfred R. Parr and Ronald J. Parr (the "Parrs") on the condition that (1) the Parrs refile petitions for reorganization under Chapter 11 of the Bankruptcy Code ("Chapter 11 petitions") on or before October 26, 1979, and that (2) the debtors consent to the appointment of a Trustee in the Parrs' Chapter 11 proceedings and in the Parr Meadows Racing Association ("Parr Meadows") Chapter 11 proceeding.[1] ("October Orders")[2]. If the debtors failed to comply with the aforesaid conditions, they would be adjudged bankrupts. The next day the Parrs filed Chapter 11 petitions and consents to the appointment of a Trustee. Ten days later the Court entered the November Orders.

The genesis of the aforementioned Orders is the following. On September 11, 1979 Flushing moved this Court for an order dismissing the Parrs Chapter XI petitions. Thereafter, on October 4, 1979 the Parrs consented to Flushing's motion to dismiss the proceedings. After Flushing was advised that the Parrs had consented to its motions, Flushing sent the Court a letter contending that pursuant to Bankruptcy Rule 11–42, the Court could not dismiss the Parrs' petitions until after "a hearing on notice". Thereafter, on October 9, 1979 Flushing moved the Court for an order adjudging the Parrs bankrupts.

■ Flushing's contention, that the Court could not dismiss the Parrs' petitions until after "a hearing on notice" was clearly erroneous. Bankruptcy Rule 11–42 does not require a hearing when a debtor consents to a creditor's motion to dismiss a Chapter XI proceeding. Bankruptcy Rule 11–42(a) speaks to the situation where the *debtor* moves to dismiss the petition. Rule 11–42(b) only requires that the Court enter an order "after hearing *on such notice as it may direct*". Obviously, the Court may dispense with notice.

Nevertheless, the Court ordered a hearing on the Parrs' consents to Flushing's motions for orders dismissing the Parrs Chapter XI petitions, so that the Court might determine whether dismissal was in the best interest of creditors.

At the hearing, counsel for the Creditor's Committee advised the Court that it recently discovered that it had a conflict of interest. Counsel for the Creditor's Committee had been retained as counsel for a corporation, one of whose shareholders is Edwin Fleck. Mr. Fleck is not unknown to this Court; he is connected with the mortgage participation group which Flushing represents.

Clearly, in view of this conflict of interest, counsel for the Creditor's Committee could no longer effectively represent the unsecured creditors. Disclosure of this conflict troubled the Court since the Court also was aware of the various charges made by Flushing and the Parrs against each other that the other had engaged in improper, fraudulent and/or unlawful conduct.

Therefore, the Court concluded that dismissal of the Parr Chapter XI petitions on the conditions set forth in the October Orders was in the best interest of creditors because: (a) the only chance for the unsecured creditors of the Parrs and Parr Mead-

---

1. Parr Meadows filed a Chapter 11 petition on October 4, 1979.

2. This Court's Order dated September 25, 1979, conditionally adjudicating Ronald Parr a bankrupt without further notice did not bar the Bankruptcy Court from entering the October Orders. In its equitable powers, the Bankruptcy Court may vacate or modify previous orders when subsequent events demonstrate the necessity therefore. *In re Texlon Corp.*, 596 F.2d 1092, 1100–1101 (2d Cir. 1979).

ows to receive any payment on their claims was a successful reorganization of the debtors. While it appeared that the debtors might be able to effect reorganizations under Chapter 11, the Court felt it essential that an independent third party investigate the situation and report to the Court whether or not the Parrs and Parr Meadows could be successfully reorganized; (b) the situation required that an independent third party be appointed to investigate claims by and against Flushing and the Parrs that the other had engaged in improper, fraudulent and/or unlawful conduct,[3] and (c) the Court was aware that Parr Meadows had filed a Chapter 11 petition on October 4, 1979. The Court also was aware that if the Parrs were adjudged bankrupts, Parr Meadows, as debtor-in-possession, or a Trustee appointed in its stead, could commence an action to regain the Parr Meadows Race Track.[4]

In sum, the Court felt that it was in the best interest of creditors, best interest of justice and in the best interest of judicial economy to enter the October Orders.[5]

On October 26, 1979 the Parrs filed Chapter 11 petitions and consents to the appointment of trustee. Thereafter, the Court entered its November Orders.

■■■ The Bankruptcy Court was and is a court of equity.[6] A court of equity must do justice to all parties. In proceedings where allegations have been made by the debtor and a creditor that the other had engaged in improper, fraudulent and/or illegal conduct, and where unsecured creditors are unrepresented, the Bankruptcy Court must act as a court of equity to protect the rights of all parties. The Bankruptcy Court's equitable powers are necessarily quite broad and flexible, so that the Court may fashion the appropriate relief.

The United States Supreme Court has described the workings of a Court of Equity as follows:

In shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow. *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 27 n. 10, 91 S.Ct. 1267, 1275, 1281, 28 L.Ed.2d 554 (1971). Moreover, in constitutional adjudication as elsewhere, *equitable remedies are a special blend of what is necessary,* [footnote omitted] *what is fair, and what is workable.* "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Brown v. Board of Education*, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955). Mr. Justice Douglas, speaking for the Court, has said,

"The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. *Flexibility rather than rigidity has distinguished it.* The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co. v. Bowles*, 321 U.S. 321, 329–330, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944).

See also *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 55 S.Ct. 582, 584, 90 L.Ed. 743, 162 A.L.R. 719 (1946). *In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities*

---

**3.** If Flushing had engaged in improper, fraudulent and/or illegal conduct, its claim could be equitably subordinated and its lien could be transferred to the estate. See, 11 U.S.C. § 510(c).

**4.** Flushing itself has alleged that the track was fraudulently conveyed from Parr Meadows to Ronald Parr.

**5.** It must be noted that the Court neither ordered that the Chapter 11 petitions be filed nor ordered the appointments of a Trustee. The Court merely gave the debtor the choice of filing a Chapter 11 petition and consenting to the appointment of a Trustee, or in the alternative, face adjudication. The choice was left to the Parrs.

**6.** See, *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and 28 U.S.C. § 1481.

*and necessities inescapably involved in reconciling competing interests*, notwithstanding that those interests have constitutional roots. *Lemon v. Kurtzman*, 411 U.S. 192, 200–201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973).

■ The United States Supreme Court stated that equitable remedies are a special blend of what is necessary, what is fair and what is workable. *Lemon, supra*, at 200, 93 S.Ct. 1463. Under the circumstances extant in these proceedings, the Court's October Orders and November Orders were necessary, fair and workable.

Neither the Bankruptcy Code nor the Legislative history prohibits the Bankruptcy Court from exercising its equitable powers to appoint a trustee when, as in this case, a trustee is necessary.

■ Section 1104(a) provides when a Court *shall*, i. e., when a Court *must* appoint a trustee. This section does not limit the Court's power to appoint a trustee when it is necessary to protect the rights of all parties and to prevent a fraud upon the Court.

There is very little *relevant* legislative history on Section 1104(a). Both the House Report [7] and the Senate Report [8] dealt with versions of Section 1104(a) that were not enacted into law.

7. House Report No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News, p. 5787.

8. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News, p. 5787.

9. Section 1104(a) of H.R. 8200, 94th Cong., 2d Sess. (1978).

10. The Senate version, unlike the House version, contains mandatory language. S.2266, § 1104(a) provides in pertinent part:
"In the case of a public company, the Court, within ten days after the entry of an Order for relief under this Chapter, *shall* appoint a disinterested trustee . . ." (emphasis added)

11. It should be noted that H.R. 8200 originally contemplated a United States Trustee System ("U.S. Trustee system"). H.R. 8200, 9th Cong., 2d Sess. (1978). The U.S. Trustee system was

The language of H.R. 8200, Section 1104(a) [9] was permissive, i. e., provided for when a Court *may* order the appointment of a trustee. Apparently, under H.R. 8200 the Court was never required to appoint a trustee; it was always within the Court's discretion.

The Senate version, S.2266, provided for the mandatory appointment of a trustee in cases involving a public company as defined therein.[10]

Section 1104(a) as enacted, is a compromise between the Senate version and the House version. Section 1104(a) opted for a "flexible standard for appointment of trustees". 5 *Collier on Bankruptcy* (15th ed. 1979) ¶ 1104.01 at 1104–15.

While rejecting the Senate version, which would have made the appointment of a trustee mandatory in the case of a public company, Section 1104(a) as enacted, unlike the House version, does make it mandatory for the Bankruptcy Court to appoint a trustee if the requirements of subdivision (1) or subdivision (2) of Section 1104(a) are met. Section 1104(a) in no way limits the Court's equitable powers to appoint a trustee, on request of a party in interest or otherwise, when such action is necessary to protect the rights of all parties.[11]

In addition, the Court's November Orders were valid because they complied with Section 1104(a). That Section provides:

designed to separate completely the judicial and administrative functions that were performed by the bankruptcy judges. The U.S. Trustee was to administer and police the bankruptcy system. H.R.Rep. No. 595, 95th Cong, 1st Sess. 109, 232–33 (1977).

Unfortunately, the U.S. Trustee system as originally envisioned was not adopted. Under the Code, the U.S. Trustee system exists as a pilot program in certain districts; the Eastern District of New York is not a pilot district.

Under the Code as enacted, the Bankruptcy Court still retains certain administrative duties. The most glaring example of such duties is contained in § 1102.

§ 1102 requires the Court to appoint a Creditors' Committee. The Court has complete discretion in appointing a Creditors' Committee. 5 *Collier on Bankruptcy* (15th ed. 1979) ¶ 1102.-01 at 1102–11–12. The Bankruptcy Courts still retain major administrative functions.

Appointment of trustee or examiner

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, *the court shall order* the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtors; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. (emphasis added)

The consents to the appointment of a trustee filed by the Parrs constituted a "request of a party in interest".[12] Flushing, who submitted the proposed October Orders, had notice of the action that was to be taken, i. e. the appointment of a trustee. It is inconceivable that Flushing did not have notice and actual knowledge that the Parrs had filed their Chapter 11 petitions and consents to the appointment of a trustee on October 26, 1979. Therefore, the burden was on Flushing to request a hearing on the appointment of a Trustee.

Once a party has notice of the action to be taken; an actual hearing need not be held before an act is authorized if such a hearing is not requested in a timely manner by a "party in interest". Thus the burden is placed upon interested parties to provide the impetus for a hearing an action may be taken without a hearing when no request is made." 2 *Collier on Bankruptcy* (15 ed. 1979) ¶ 102.02 at 102–4.

Flushing had notice and actual knowledge that a trustee was to be appointed in these proceedings. However, it did not request a hearing on the appointment of the Trustee. Therefore, under Section 102(1)(B)(i) no hearing was required to have been held.

In view of the foregoing, it appears unlikely that Flushing will succeed on the merits of its appeals.

## IRREPARABLE HARM TO FLUSHING, CREDITORS AND THE PUBLIC INTEREST

Assuming arguendo that there was a likelihood that Flushing would succeed on the merits of its appeals, the balance of the equities clearly weighs in favor of denying a stay pending appeal.

Flushing contends that if the November Orders are not stayed, it will be "irreparably and unfairly injured". However, Flushing's contention is without substance.

Even assuming that District Court invalidates the November Orders, Flushing will not be irreparably and unfairly injured. If the November Orders are invalid it may well be that the trustee and his counsel would not be entitled to an administration expense with priority over Flushing's administration expenses.

Flushing's principal argument appears to be that it does not wish to place the trustee at risk. However, the trustee has indicated that he is ready to bear the risk. Transcript of December 5, 1979 hearing ("transcript") at pp. 56–57.

On the basis of the December 5, 1979 hearing the Court concludes that the other creditors and the public interest would suffer irreparable harm if the Court's November Orders are stayed pending appeal. At the hearing held on December 5, 1979 the trustee testified to the following:

12. A "party in interest" is not defined in Section 101, however, Section 1109(b) provides that:

"*A party in interest, including the debtor*, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equi-

ty security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

From the foregoing it is clear that the debtors herein are parties in interest.

[Mr. Lowe] It appeared evident to me that the success of the outcome of any reorganization proceeding would depend on the reopening of the track for the 1980 season. Transcript at 60.

\* \* \* \* \* \*

[Mr. Lowe] At the risk of repeating myself, it appeared to me that somebody had to get in there in a hurry to get a season started in 1980, and otherwise we were all wasting a great deal of time and money. With the efforts of Mr. Scheffel and myself, we have contacted at least a half a dozen people who we have reason to believe might have an interest in opening the track on some basis. I would prefer not to have to identify those people at this point, Your Honor, because I think it might—it wouldn't serve any useful purpose, and it might hurt the prospects of encouraging somebody to come in to reopen the track. But I do make a representation to the Court that I have contacted at least five and possibly six people, some of whom have demonstrated more than a mild interest in the matter. I would not represent to the Court that I have gotten any promises or assurances commitments from anybody, but I have gotten more than a mild interest in the matter from at least two people. Transcript at 63.

\* \* \* \* \* \*

[Mr. Lowe] I would like to add that at the instance of Mr. Parr, I received a telephone call last Friday from an attorney whom I know of and whom I [have a] great deal of respect for, who represents a food concessioneer, *who is giving serious consideration to making funds available towards the opening of a racing season in 1980.* Transcript at 79. (emphasis added)

\* \* \* \* \* \*

[Mr. Speciner] Now, Sir, assuming that as trustee you are stayed by the Order of the Court from continuing your administration of this debtor's estate and performing your duties and responsibilities as trustee, in your view, what effect, if any, would that have on your ability as Trustee to have things in place by January 15th. with a view towards a 1980 racing season?

\* \* \* \* \* \*

[Mr. Lowe] I think I would *effectively be denied the opportunity of attempting to reopen the track or even pursuing my inquiries as to the desirability of doing so.*

[Mr. Speciner] In effect, therefore, do you have an opinion as to your ability to get the track open for the 1980 racing season, if in fact your are stayed by Court order from proceeding as Trustee?

\* \* \* \* \* \*

[Mr. Lowe] I think your question answers itself. Transcript at 82. (emphasis added)

In view of the testimony adduced at the hearing, the Court concludes that an Order staying the November Orders would cause irreparable and unfair harm to the unsecured creditors and the general public, while, Flushing would not suffer irreparable harm. Should these debtors be liquidated, it is doubtful that the unsecured creditors would receive anything, and the public would be deprived of a possible source of employment. The relief requested by Flushing would not "protect the rights of all parties in interest".[13]

In view of the foregoing, it is,

ORDERED, that Flushing's motion for a stay, pending appeal, of any and all action in furtherance of, and pursuant to, the Orders of the Bankruptcy Court, dated November 6, 1979 be, and the same hereby is, denied in all respects.

---

**13.** Federal Rule of Bankruptcy Procedure 805.