In re AMERICAN PREFERRED PRESCRIPTION, INC., Debtor.

Tracar, S.A., Appellant,

v.

Kenneth P. Silverman, as Chapter 11 Trustee for American Preferred Prescription, Inc., et al., Appellees.

No. 99 CV 6108(DRH).

United States District Court, E.D. New York.

Sept. 26, 2000.

Parker Chapin Flattau & Klimpl, LLP, New York City, by Joel Lewittes, for appellant.

Silverman Perlstein & Acampora LLP, Garden City, New York, by Eugene P. Cimini, Jr., for Kenneth P. Silverman, Chapter 11 Operating Trustee.

Meltzer, Lippe, Goldstein & Schlissel, P.C., Mineola, New York, by Thomas J. McGowan, for Cost Controls, Inc.

### AMENDED MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is the appeal of Tracar, S.A. ("Tracar") from an August 25, 1999 Order of the United States Bankruptcy Court for the Eastern District of

New York (Eisenberg, B.J.) (the "August 25, 1999 Order"). For the reasons that follow, the August 25, 1999 Order is reversed and pursuant to 28 U.S.C. § 1292, this matter is hereby certified for appeal.

## BACKGROUND

The history of this case is set out in great detail in the August 25, 1999 Order, familiarity with which is assumed. Briefly, American Preferred Prescription, Inc. and its affiliates ("APP" or the "Debtor") operated retail, delivery, and mail order pharmaceutical prescription businesses located in New York, Florida, and Georgia. (August 25, 1999 Order at 2–3.) On July 22, 1993, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code and, by Amended Order dated March 26, 1996, the Bankruptcy Court confirmed the Debtor's Third Amended Plan of Reorganization (the "Plan"). (*Id.* at 3.)

Prior to plan confirmation, Cost Controls, Inc. ("CCI"), the largest creditor of the Debtor, initiated an adversary proceeding against the Debtor based upon fraudulent conveyance and alter ego theories. (*Id.* at 4.) After a nine-day trial, the Honorable Francis Conrad issued an Order on March 21, 1997 (the "March 21, 1997 Order") granting CCI compensatory damages in the amount of $3,043,781.03 and punitive damages in the amount of $9,131,343.09 against the Debtor. This decision was appealed and is presently subject to a stay pending the resolution of other matters.

Shortly after Judge Conrad issued his opinion, CCI filed an Order to Show Cause before the Bankruptcy Court seeking the appointment of a Chapter 11 Trustee to safeguard the Debtor's assets so that the Plan could be fully consummated. (*Id.* at 5–6.) By Order dated April 11, 1997, just over one year after the Plan was confirmed, the Bankruptcy Court appointed Kenneth Silverman as trustee (the "Trustee"). (*Id.* at 6.) As described by the Bankruptcy Court, the appointment was "for the limited purpose of preserving and maintaining the Debtor's assets in light of Judge Conrad's findings of 'lying, stealing and cheating' on the part of the Debtor and its principals."[1] (*Id.*) The April 11, 1997 Order was not appealed.

Thereafter, the Trustee filed his first report on the Debtor, which included a finding that the Debtor was paying large sums of money to its parent corporation for services that were, in fact, being performed by the Debtor. (*Id.*) The report also noted that the Debtor's principals were extremely reluctant to cooperate with the Trustee. (*Id.* at 6–7.) At the request of the creditors, and after notice and a hearing, the Bankruptcy Court issued an Order on June 19, 1997 expanding the powers and duties of the Trustee to include the authority to investigate and settle all claims asserted by and against the Debtor. (*Id.* at 7.) No appeal was taken of the June 19, 1997 Order.[2]

After an extensive hearing lasting six months which produced evidence that the

---

1. The actual language of the April 11, 1997 Order reads:

> ORDERED, that pursuant to 11 U.S.C. § 105, the appointment of Kenneth P. Silverman, Esq., as Chapter 11 trustee is approved, and it is further
> ORDERED, that Kenneth P. Silverman, Esq., shall have all the rights, duties and powers vested in a trustee appointed under Title 11 of the United States Code, including authorization to take possession of the

debtor's property, to operate and manage the debtor's business pursuant to 11 U.S.C. § 1108, and to perform all of the duties of trustee prescribed in 11 U.S.C. § 1106(a)....

2. The June 19, 1997 Order provides that:

> [the] Trustee is authorized, empowered and directed to investigate the Claims asserted by and against the Debtor and, if in his business judgment it is advisable for the

Debtor was secreting assets to avoid payment to creditors under the Plan, by Order dated June 24, 1998, the Bankruptcy Court "enlarged the Trustee's powers to that of a full operating trustee." (*Id.* at 10.) Thereafter, the Trustee moved to sell the assets of the Debtor, which motion was granted by Order dated November 2, 1998. (*Id.* at 10–11.) No appeals were taken from the June 24, 1998 or the November 2, 1998 Orders. (*Id.*)

On May 17, 1999, Tracar, the holder of secured and unsecured claims against the Debtor totaling $6,684,107.00, filed a motion for an "Order Scheduling a Hearing to Remove the Trustee and to Dismiss all Pending Actions." (*Id.* at 1.) Tracar argued, *inter alia*, that the Bankruptcy Court lacked subject matter jurisdiction to appoint the Trustee post-confirmation. Recognizing that an objection to subject matter jurisdiction may be asserted at any time, by Order dated August 25, 1999, the Bankruptcy Court entertained, and denied, Tracar's motion, finding that it had post-

confirmation jurisdiction to appoint the Trustee pursuant to the Plan and 11 U.S.C. § 105(a) ("Section 105(a)") and 11 U.S.C. § 1142 ("Section 1142"). (*Id.* at 12–23.) The Bankruptcy Court also found that Tracar had consented to the Bankruptcy Court's continuing jurisdiction over the case pursuant to a Secured Guarantee and Subordination Agreement. (*Id.* at 23–24.) The August 25, 1999 Order is the subject of the instant appeal.[3]

## QUESTION PRESENTED

Did the Bankruptcy Court exceed its subject matter jurisdiction in appointing a trustee following confirmation of the Debtor's Chapter 11 Reorganization Plan?

## DISCUSSION

I. *The Post–Confirmation Appointment of the Trustee Implicates the Bankruptcy Court's Subject Matter Jurisdiction*

■ The Bankruptcy Court has limited subject matter jurisdiction, with its powers

---

Debtor to settle those claims, to negotiate a settlement which settlement shall not be binding upon the debtor without an order of this Court and seek this Court's approval of same pursuant to and in accordance with Federal Rules of Bankruptcy Procedure, Rule 9019 upon notice to the Debtor, Office of the United States Trustee and all parties in interest and such others as may be directed by this Court to receive notice thereof; and ... pending the entry of an order by this Court approving any settlement, the debtor's rights to oppose such settlement before the court shall be preserved ... [and] that the Trustee is authorized and directed to take such steps, do such things and expend such sums as may be reasonably necessary to implement the terms and conditions of this Order.

3. As noted previously, none of the Trustee appointment orders was the subject of an appeal. Appellant initially broached the purported invalidity of the post-confirmation appointment on its appeal of a June 28, 1999

Order of the Bankruptcy Court which granted the Trustee's motion to expunge Tracar's claims. Tracar argued, *inter alia*, that because the Bankruptcy Court lacked subject matter jurisdiction to appoint the Trustee, all actions taken by the Trustee, including the motion to expunge Tracar's claims, should be declared void. By Memorandum and Order dated March 20, 2000, this Court reversed the June 28, 1999 Order, finding that the Trustee's motion to expunge Tracar's claims was barred by the doctrine of res judicata. *In re APP*, No. 99 CV 4232 (E.D.N.Y. Mar. 20, 2000). Because the Court did not address Tracar's other argument regarding the appointment of the Trustee, Tracar, along with the other parties, were directed to advise the Court whether the issue of the Bankruptcy Court's jurisdiction to appoint a post-confirmation trustee was raised on any other appeal pending before the Court and whether the parties still wished the issue to be decided. In response to the Court's inquiry, all of the parties pointed to the instant appeal and urged the Court to decide the issue forthwith.

18

circumscribed by the Bankruptcy Code. *In re Chargit, Inc.*, 81 B.R. 243, 246 (Bankr. S.D.N.Y.1987).

Tracar maintains that the post-confirmation appointment of the Trustee exceeded the Court's subject matter jurisdiction. The claim is made that the appointment is at odds with the clear statutory language of 11 U.S.C. § 1104(a) ("Section 1104"), and that the challenged action may not be redeemed—as appellees have endeavored to do—via reference to 11 U.S.C. § 1123(a)(3)(B) ("Section 1123(a)(3)(B)"), Section 1142 or Section 105(a).

■ To the extent the Trustee argues that Tracar has "acknowledged the Trustee's authority ... in exchange for the Trustee's agreement not to pursue an adversary proceeding seeking to substantively consolidate the Debtor with the affiliates," his position is off-target if meant to imply the current objection has been waived. Similarly, the failure of Tracar to appeal the Orders of April 11, 1997, June 19, 1997, and June 24, 1998, while perhaps inconsistent with Tracar's position now, is otherwise irrelevant. It is axiomatic that such an objection may be raised at anytime, even on appeal. *E.R. Squibb and Sons, Inc. v. Accident and Cas. Ins. Co.*, 160 F.3d 925, 929–30 (2d Cir.1998). Moreover, parties may not confer subject matter jurisdiction by consent or by waiver. *See* 5A Charles A. Wright & Arthur M. Miller, *Federal Practice and Procedure* § 1350, at 204 (2d ed.1990) and cases cited therein.

In sum, if, as Tracar maintains, the challenged appointment may not be squared with the relevant provisions of the Bankruptcy Code, then the court below exceeded its subject matter jurisdiction in appointing the Trustee following confirmation of the Plan.

## II. *Standard of Review*

■ A bankruptcy judge's order may be reversed only if his or her findings of fact are "clearly erroneous" while conclusions of law are reviewed *de novo.* *See* Bankruptcy Rule 8013; *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990); *see also In re PCH Assocs.*, 949 F.2d 585, 597 (2d Cir.1991); *In re Duratech Indus., Inc.*, 241 B.R. 283, 286 (E.D.N.Y.1999).

## III. *Sections 1104(a) and 1123, the two Code Provisions Which Address the Timing of the Appointment of a Chapter 11 Trustee*

■ Initially, it should be noted that the appointment of a trustee in a Chapter 11 reorganization case is an extraordinary remedy. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir.1989); *In re Sovereign Estates, Ltd.*, 104 B.R. 702 (Bankr.E.D.Pa.1989); *see also* 7 *Collier on Bankruptcy* ¶ 1104.02[3][b][i], at 104–10 (15th rev. ed.1998) (hereinafter "7 Collier"). Absent fraud or other compelling reason, it is preferable to have the management of a debtor corporation operate the business than to place an outsider at the helm. *Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239 (4th Cir.1987); 7 Collier ¶ 1104.02[3][b][i], at 1104–10.

Attention will now be directed to the two code provisions which address the timing of trustee appointments in Chapter 11 cases.

Section 1104(a), entitled "Appointment of trustee or examiner," provides in pertinent part:

(a) At any time after the commencement of the case *but before confirmation of a plan,* on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. (emphasis added).

Notwithstanding the unmistakable directive in Section 1104(a) that a Chapter 11 trustee "shall" be appointed, if at all, "before confirmation," it could be argued that the statute pertains to "when a Court must appoint a trustee [but] does not limit the Court's [discretionary] power to appoint a trustee when it is necessary to protect the rights of all parties and to prevent a fraud upon the Court."[4] *In re Parr*, 1 B.R. 453, 457 (Bankr.E.D.N.Y. 1979). Accordingly, or so the argument continues, Section 1104(a) does not preclude the naming of a trustee following confirmation as occurred here. That argument, while having a certain visceral appeal, does not withstand scrutiny for a number of reasons, including:

A. *Failure to Appreciate Statutory Scheme Embodied in Section 1104(a)*

■ A trustee may not be appointed by the Court, *sua sponte*. *In re Manda-*

*lay Shores Coop. Housing, Ass'n,* 22 B.R. 202, 207 (Bankr.M.D.Fla.1982). Rather, the statute requires a request by a party in interest or the United States trustee as a precondition to appointment. However, if such a request is made, coupled with "cause"—such as fraud or incompetence by current management—or "if such an appointment is in the interests of [,*inter alia,*] creditors," then the appointment *must* be made.

Given the broad array of conditions mandating appointment, viewed in conjunction with the fact that, as noted, the appointment of a trustee in a Chapter 11 case is an extraordinary remedy, the need for the discretionary power suggested in *Parr* is illusory. In fact, the previously quoted conditions underscored in *Parr* for the proposition that the Bankruptcy Court's equitable powers permit the appointment of a trustee when deemed "necessary," *see In re Parr*, 1 B.R. at 457, are mandatory conditions which fall squarely within the appointment parameters of Section 1104(a).[5]

■ This is not to say that judicial discretion is foreign to the process. But the discretion is found in the court's determination as to whether a ground for an appointment under subdivisions 1 or 2 of Section 1104(a) has been established, not in endeavoring to make an appointment outside of the statutory framework. *See In re Sharon Steel Corp.*, 871 F.2d at 1225 ("While 11 U.S.C. § 1104(a) mandates appointment of a trustee when the bankrupt-

---

4. Neither the Bankruptcy Court in explaining the challenged appointment (Aug. 25, 1999 Decision and Order), nor the appellees in their appellate memoranda, have raised the above argument although it seems implicit in their respective positions.

5. *In re Parr*, 1 B.R. 453, 457 (Bankr.E.D.N.Y. 1979) did not involve a post-confirmation trustee, nor does the decision specifically address that subject. Moreover, for the reasons indicated in the text, its dictum—even if assumed to impliedly pertain to post-confirmation Chapter 11 appointments—is not helpful to appellees.

cy court finds cause—seemingly requiring plenary review, 'a determination of cause . . . is within the discretion of the court.' ") (quoting *Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc.,* 828 F.2d 239, 242 (4th Cir.1987)); *In re Oklahoma Refining Co.,* 838 F.2d 1133, 1136 (10th Cir.1988) ("Once the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee.").

### B. The Bankruptcy Code Defines When a Chapter 11 Trustee may be Appointed

To sidestep the mandate of Section 1104(a) and conclude that a trustee may displace a confirmed debtor requires a belief that the Congress—by inadvertence or otherwise—neglected to address post-confirmation appointments. But such is not the case. Section 1123(b)(3)(B) provides that a reorganization plan may allow for "the retention and enforcement by the debtor, *by the trustee,* or by a representative of the estate appointed for such purpose, of any . . . claim or interest" belonging to the debtor or to the estate. 11 U.S.C. § 1123(b)(3)(B) (emphasis added).

To place Section 1123(b)(3)(B) in context, it is necessary to note that a "bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *In re Johns–Manville Corp.,* 7 F.3d 32, 34 (2d Cir.1993). Accordingly, the "bankruptcy court's post-confirmation jurisdiction . . . is defined by reference to the Plan." *Id.* For that reason, a trustee may not be appointed absent authorization in the plan even for the limited

purposes delineated in Section 1123.[6] *See* 11 U.S.C. § 1123(b)(3) (stating that "a plan may . . . provide for" the retention of a trustee).

Here, the Plan is silent as to a trustee and, thus, the challenged appointment is not only violative of Section 1104(a) but may not be legitimatized by reference to Section 1123. Beyond that, however, and of particular significance to the main point presently under discussion, the existence of Section 1123 runs counter to the notion that Congress simply neglected the subject of post-confirmation Chapter 11 trustees.

Indeed, both the Senate and the House proposed separate bills prior to the enactment of Section 1104(a) in its current form. The House bill provided that "[t]he court is permitted to order the appointment of one trustee *at any time after the commencement of the case* if a party in interest so requests." H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6358 (emphasis added). The Senate's proposed legislation suggested that § 1104(a) provide that the appointment of a trustee "may" (for a non-public company) or "must" (for a public company) "be made *at any time prior to confirmation of the plan.*" S.Rep. No. 989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5901 (emphasis added).

Neither the Senate nor House bill was adopted. Yet their language is germane for present purposes as evidencing the legislators' recognition of the need to consider and resolve the temporal question regarding the appointment of Chapter 11 trust-

---

**6.** A Section 1104(a) trustee has far broader powers, *see, e.g.,* 11 U.S.C. § 1108, than his or her counterpart appointed pursuant to a reorganization plan and Section 1123(b)(3)(B). The Trustee here—who correctly identifies himself as an "Operating Trustee" (cover page of Trustee's Br.)—has been vested with

powers consistent with those possessed by a trustee appointed pursuant to Section 1104(a) but exceeding those authorized by Section 1123(b)(3)(B). As a result, the present appointment would be invalid even if, contrary to the fact, the Plan's jurisdictional retention provisions provided for a trustee.

ees. Clearly the Code covers when, and under what circumstances, a Chapter 11 trustee may be appointed.

In sum, the appointment which is the subject of this appeal is at odds with the controlling Code provisions, *viz.*, Sections 1104(a) and 1123(b)(3)(B).

## IV. *Relevant Case Law On Sections 1104(a) and 1123*

Few cases have addressed the question of the legitimacy of a post-confirmation appointment of a trustee. The paucity of authority is traceable, at least in part, to the fact that "[e]xcept as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). *See generally* 7 Collier ¶ 1129.01[1], at 1129–12. Because confirmation commonly causes the estate to revert back to the debtor, there is, in such instances, no property for a trustee to administer. Not surprisingly, then, few efforts have been made to appoint post-confirmation operating trustees (as distinct from Section 1123(b)(3)(B) trustees), resulting in the virtual absence of decisions addressing such appointments. Presumably, Section 1104(a)'s time proscription also accounts for the scarcity of cases on point. In any event, those courts presented with the issue have summarily vacated such appointments as prohibited by Section 1104(a).

In *In re Modern Steel Treating Co.*, 130 B.R. 60 (Bankr.N.D.Ill.1991), *aff'd*, No. 91 C 5747, 1992 WL 82966 (N.D.Ill. Apr.1, 1992), shareholders of the debtor asked the bankruptcy court to remove two of the principal officers of the debtor due to their purported "continuing bad faith refusal to carry out individual and corporate obligations" under the confirmed plan of reorganization and to replace them with a Chapter 11 trustee. *Id.* at 65. In denying that motion the court explained that "[e]ven if there were bad faith in connection with the Plan, a trustee can only be appointed 'before confirmation of a plan,'" *Id.* at 66 (citing § 1104(a)).

The same conclusion was reached in *In re Schultz*, 69 B.R. 629 (D.S.D.1987), *case dismissed*, 837 F.2d 481 (8th Cir.1987). There, the bankruptcy court appointed a trustee in the order confirming the plan. In reversing that order, the district court held:

> "[A] Chapter 11 trustee can only be appointed after the petition is filed and before confirmation of a plan. *Under the plain language of section [1104(a) ],*[7] *it was error for the Bankruptcy Court to order the appointment of a Chapter 11 trustee contemporaneous with confirmation of the liquidation plans.*"

*Id.* at 631 (emphasis added).

Similarly, in *In re Record and Tape Place, Inc.*, No. 81–1665–L, 1983 Bankr.LEXIS 6461 (Bankr.D.Mass. Apr.7, 1983), the bankruptcy court held that the clear language of Section 1104 limited its authority to appoint a trustee to before confirmation of a plan.[8] *Id.* at *14. In that case, creditors moved for an order revoking the order of confirmation and for the appointment of a Chapter 11 trustee, based upon the debtor's material default under the plan. In denying the motion, the bankruptcy court noted that once it decided that revocation of the confirmation

---

7. In *Schultz,* references to certain Bankruptcy Code sections are delineated under the identical provisions of the then binding regional Pilot United States Trustees' Program.

8. As in *Schultz,* references to certain Bankruptcy Code sections were delineated under the identical provisions of the then binding regional Pilot United States Trustees' Program.

order was inappropriate, it was without jurisdiction to appoint a trustee under Section 1104 as "the Code limits the appointment of a trustee to 'any time after the commencement of the case but before confirmation of a plan.'" *Id.* at \*10 (quoting 11 U.S.C. § 1104(a)).[9]

Appellees have failed to cite a single case in which the appointment of a post-confirmation operating trustee has been upheld.[10] Indeed, no case has been provided which even alludes to a non-section 1123(b)(3)(B) trustee being in place in a post-confirmation Chapter 11 setting. It appears that the only reported decisions on point are *In re Modern Steel Treating Co.* and *In re Schultz*, both of which, as noted, are adverse to appellees' position. In addition, *In re Record and Tape Place, Inc.*, a decision published solely on LEXIS, is also contrary to appellees' argument.

V. *The Terms of the Reorganization Plan, Considered in Conjunction With Code Sections 105(a) and 1142, are Insufficient to Override the Plain Meaning of Section 1104(a)*

In seeking to justify the challenged appointment, the court below and the appellees cite the jurisdictional retention provisions in the Plan, as well as Sections 105(a) and 1142. Yet, none of the proffered predicates for the action taken—whether considered singularly or cumulatively—is suf-

ficient to affirm the appointment. Those predicates will be discussed *seriatim*.

A. *Jurisdictional Retention Provisions of the Plan*

■ Article 10 of the Plan contains expansive retention of jurisdiction provisions including the following:

> The Court shall retain jurisdiction of this Chapter 11 case . . .
>
> (n) to enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers that the Court may deem necessary or appropriate;
>
> . . . .
>
> (q) to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof[.]

Are subdivisions (n) and (q) quoted above, or any other portions of the retained powers, appropriate bases to appoint a post-confirmation trustee? That question requires a negative answer. The word "trustee" does not appear in the Plan. Moreover, such terms as "to enter any order" or "to make such orders as are necessary or appropriate to carry out the provisions of the Plan" are "general terms

---

9. The Court notes that there is another case which, although not precisely on point, warrants discussion. In *In re Lowenschuss*, 171 F.3d 673 (9th Cir.1999), the Ninth Circuit rejected the debtor's contentions that the bankruptcy court erred in appointing a Chapter 11 trustee post-confirmation because the district court had stayed the Confirmation Order pending resolution of certain issues. *Id.* at 685. Thus, the Court held that because the plan had not yet been confirmed—given the stay—the appointment of the trustee was not violative of Section 1104(a).

10. *In re Woods*, 173 F.3d 770 (10th Cir.1999), a decision not cited by the parties, was a bankruptcy case with a post-confirmation trustee empowered to "pursu[e] the business of the estate until such efforts were no longer justified, at which time he was to sell the estate's interest." *Id.* at 773. Neither the propriety nor breadth of his appointment are mentioned in the decision, presumably because not raised by the litigants. Moreover, and more importantly, that confirmed plan, unlike the Plan here, contained a specific provision for a trustee to be appointed. *Id.* at 773, 781.

of future judicial action necessary to ensure that the plan is not subverted," *Falise v. American Tobacco Co.*, 241 B.R. 48, 59 (E.D.N.Y.1999), but are insufficient to override the controlling Code provisions, *viz.*, Sections 1104(a) and 1123(b)(3)(B). *Cf. Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994) (holding that a bankruptcy court lacked jurisdiction post-confirmation to adjudicate adversary proceeding concerning asset purchases at bankruptcy sale, notwithstanding inclusion of language in the plan purporting to retain such jurisdiction in the bankruptcy court); *In re BankEast Corp.*, 132 B.R. 665, 670 (Bankr.D.N.H.1991) (holding that a plan provision purporting to provide jurisdiction over any and all actions involving the debtor post-confirmation was invalid as beyond the scope of the Bankruptcy Code).

Such cases as in *In re Federated Dep't Stores, Inc.*, 240 B.R. 711 (Bankr.S.D.Ohio 1999) and *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748 (D.N.J.1999)—cited by appellees—do not warrant a contrary conclusion. Granted, post-confirmation jurisdiction may, in certain instances, be co-extensive with the statutory grant of authority over bankruptcy matters embodied in 28 U.S.C. §§ 1334(a)–(b) and 157(a)–(b). *See In re Chateaugay Corp.*, 213 B.R. 633, 638–39 (S.D.N.Y.1997). But that does not mean that an action banned by a specific Code provision may, nonetheless, be properly undertaken given the breadth of the relevant subdivisions of Sections 1334 and 157. Absent from *In re Federated Dep't Stores, Inc., In re Tannen Towers Acquisition Corp.*, and like cases, is such a conflict.

The present situation is more akin to the scenario in *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 830–831 (1st Cir. 1990), although the conflict there was between the plain meaning of another subsection of Section 1104, *viz.*, subsection (c),

and the bankruptcy court's equitable powers under Section 105(a). In reversing the lower court's appointment of a trustee under Section 1104(c), the First Circuit held:

> The court had no power under the statute to appoint a trustee, and its equitable powers did not cure the infirmity. Section 105(a) does not confer upon the court the power to ignore the express commands of the statute. *Id.*, 911 F.2d at 832.

Similarly here, reference to the extensive jurisdictional power retained by the Bankruptcy Court in the Debtor's Plan is insufficient to convert the violation of Section 1104(a) into an authorized act.

### B. *Reliance on Sections 105(a) and 1142*

█ The reliance on Sections 105(a) and 1142 is similarly misplaced. Section 105, entitled "Power of Court," provides in pertinent part:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Section 1142, entitled "Implementation of plan," reads in relevant part:

> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satis-

faction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b).

Section 105(a) codifies the bankruptcy court's power to issue, *inter alia,* those orders "necessary or appropriate to carry out the provisions" of Title 11, including implementation of the confirmed plan. *See In re Joint E. and S. Dists. Asbestos Litig.,* 120 B.R. 648, 658 (E.D.N.Y. and S.D.N.Y.1990).

■ The purpose of "Section 1142(b) of the Bankruptcy Code is to assure that the terms and provisions of a confirmed chapter 11 plan are carried out until the plan is completed and the final decree is entered closing the case." *In re Chateaugay Corp.,* 201 B.R. 48, 66 (Bankr.S.D.N.Y. 1996).

■ Obviously, Section 105(a) may not be utilized as "a roving commission to do equity" and Section 1142 is not a mechanism to create jurisdiction. *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986); *see also F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 59 (2d Cir.1992) ("Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'") (quoting *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)). *See generally* 1 *Norton Bankruptcy Law and Practice 2d* § 13:3 (2000) ("Because § 105 is restricted to enforcement of the 'provisions' of the Bankruptcy Code, exercise of the powers granted under § 105 must be linked to another specific Code provision.").

The following excerpt from *In re Chateaugay Corp.,* well summarizes the point:

The Bankruptcy Court also found it had jurisdiction pursuant to 11 U.S.C.

§§ 1142 (court may order any act necessary for consummation of plan) and 105 (court may issue any order necessary to carry out provisions of Title 11). As appellants correctly note, however, neither section 1142 nor section 105 confers jurisdiction on the Bankruptcy Court; they merely codify that court's equitable powers.

213 B.R. at 640 (citing *In re Wolverine Radio Co.,* 930 F.2d 1132, 1140–41 n. 13 (6th Cir.1991)); *see also In re Holly's Inc.,* 172 B.R. 545, 554 n. 9 (Bankr.W.D.Mich. 1994).

VI. *There Were Options, Other Than the Improper Appointment of a Post–Confirmation Trustee, Available to the Court Below to Address the Fraudulent Transfers Made by the Debtor*

■ The Trustee provided the Bankruptcy Court with information pertaining to numerous instances of fraudulent transfers by the debtor in possession, which transfers jeopardized the successful implementation of the Plan. Notwithstanding Section 1104(a)'s prohibition against the appointment of a post-confirmation trustee, however, the Bankruptcy Court was not impotent to deal with the situation. For instance, the case could have been, upon the "request of a party in interest or the United States trustee," dismissed or converted to a Chapter 7 proceeding pursuant to 11 U.S.C. § 1112(b)(8) based on the "material default by the debtor with respect to [the] confirmed plan." Following conversion to a Chapter 7, a trustee could have been appointed, which trustee could have sued the recipients of the funds diverted by the debtor for the benefit of the creditors. *Donaldson v. Bernstein,* 104 F.3d 547 (3d Cir.1997).[11]

It may be that the Bankruptcy Court elected not to pursue other options based

---

**11.** Without necessarily endorsing the holding

of the bankruptcy court in *In re Record and*

on the Debtor's representations that dismissal or conversion would interrupt the flow of needed drugs to a number of its customers, including persons suffering from AIDS. Faced with that dilemma, possibly a modification of the Plan pursuant to 11 U.S.C. § 1127 ("Section 1127") could have been made, with the modification being the installation of a Section 1123(b)(3)(B) trustee to recover the monies improperly diverted from the estate. Perhaps such intervention would have also served to deter the Debtor from continuing the subject conduct.

Granted, subdivision (b) of Section 1127 provides for modifications after confirmation of a plan upon the request of the "proponent of a plan or the reorganized debtor" and "before substantial consummation of [the] plan." Preceding in reverse order, the short hiatus between the confirmation of a plan and the initial appointment of the trustee suggests that the plan fell far short of substantial consummation prior to the discovery of the improper transfers. To the extent the Debtor would be required to seek such a modification, it might have elected to do so when confronted with the other alternatives of dismissal or conversion to a Chapter 7 case.

In sum, several options were available to address the situation. However, the option selected, *viz.*, ouster of the Debtor via appointment of a post-confirmation trustee, was not available under the Bankruptcy Code, being specifically prohibited by Section 1104(a).

*Tape Place, Inc.*, it is noted that there, the court, recognizing that it lacked jurisdiction post-confirmation to appoint a trustee, authorized the appointment of a "supervisor" pursuant to Section 105(a), who "did not displace the confirmed Debtor's management but rather his duties were a hybrid of the duties of a trustee and an examiner, as those

## VII.  *Certification for Appeal*

██  This Memorandum and Order was initially issued on June 23, 2000. Thereafter, the Trustee moved for reconsideration and for certification of this matter to the Second Circuit. By Memorandum and Order dated September 26, 2000, the Court denied the Trustee's motion for reconsideration.

Pursuant to 28 U.S.C. § 1292(b),

[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.[12]

██  The Court recognizes that only " 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " *Klinghoffer v. S.N.C.*

duties are delineated in § 1106 of the Code." 1983 Bankr.LEXIS 6461, at *13.

**12.**  By Order dated August 9, 2000, and after hearing oral argument, the Court granted the Trustee's motion for a stay of the June 23, 2000 Memorandum and Order pending appeal.

26

*Achille Lauro,* 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Nonetheless, the Court finds that such circumstances are present here.

First, this case involves a "controlling question of law." 28 U.S.C. § 1292(b). As explained by Judge Glasser of this District:

> The resolution of an issue need not necessarily terminate an action in order to be "controlling." *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990). The phrase "controlling issue of law" encompasses issues ranging from those that, if the district court's order were reversed on appeal, would terminate an action, *see id.,* to those that involve "a procedural determination that may importantly affect the conduct of an action." *See In re Duplan Corp.,* 591 F.2d 139, 148 n. 11 (2d Cir.1978).

*In re Kliegl Bros. Universal Electric Stage Lighting Co.,* No. 99–CV–6640, 1999 WL 1487599, at *2 (E.D.N.Y. Dec. 15, 1999). Here, the impact of this Court's decision in removing the Trustee some three and one half years after his initial appointment is highly significant as it raises a host of questions concerning what effect his removal may have on all of the prior actions taken by him in this litigation. In that regard, the Trustee notes that "[t]here have been in excess of over two hundred (200) orders issued by the Bankruptcy and District Courts in the Debtors' cases during the last three and one half (3½) years of their administration which affect countless innocent third parties and which have restructured the Debtors' interrelationships with their creditors and others." (Mem. In Supp. of Kenneth P. Silverman, Esq.'s Motion for an Order Granting Rehearing and Reargument of the June 23, 2000 Memorandum and Order at 3 n. 3.) In addition, there are numerous adversary proceedings, objections to claims, and appeals currently pending which have been initiated by the Trustee and which need to be concluded before this bankruptcy case can be closed. (*Id.; see also id.* at 13–14.)

Next, there is a fundamental threshold question of law about which there is "substantial ground for difference of opinion," *viz.,* whether and under what circumstances a post-confirmation trustee may be appointed. More specifically here, whether the appointment of the Trustee was beyond the subject matter jurisdiction of the Bankruptcy Court. In addition, there is another issue, raised for the first time on reconsideration, as to whether Tracar's belated attack on the appointment constitutes an impermissible collateral attack on the Court's subject matter jurisdiction. As discussed in this Court's September 26, 2000 Memorandum and Order denying the Trustee's motion for reargument, resolution of such an issue appears to be one of first impression.

Finally, for the reasons stated above, it is clear that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), as it is unclear what impact this Court's decision should have on the prior and future administration of the bankruptcy estate/case.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court's August 25, 1999 Order is **REVERSED** and the Clerk of the Court is directed to close this appeal. The matter is hereby certified pursuant to 28 U.S.C. § 1292(b) to the Second Circuit for an immediate appeal and is stayed pending such appeal.

**SO ORDERED.**